

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE MURO, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 04 C 6267 |
| TARGET CORPORATION; TARGET NATIONAL BANK; and TARGET RECEIVABLES CORPORATION, | ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christine Muro alleges that Defendants Target Corporation and Target National Bank have been systematically converting Target Guest Cards into Target Visa Cards without the approval of the cardholders. In Count I of her class action complaint, Plaintiff alleges that these unsolicited credit card conversions violate the Truth in Lending Act ("TILA"), 15 U.S.C. § 1642. In addition, Plaintiff brings several other claims against Defendants: (1) she alleges that Defendants Target Corporation and Target National Bank failed to make appropriate disclosures in a credit card application or solicitation as required by 15 U.S.C. § 1637(a) & (c) (Count II); (2) she charges Target National Bank with breach of contract (Count III); (3) she charges that Target Corporation's direction to its subsidiary, Target National Bank, to make the aforementioned credit card conversions constitutes tortious interference with Plaintiff's business relationship (Count IV); (4) she brings a claim under South Dakota Codified Law § 55-1-8, seeking restitution from Target Receivables Corporation for fees and interest payments generated by the converted Target Visa Cards and held in trust for Target National Bank (Count V); and (5) she seeks declaratory relief pursuant to 28 U.S.C. § 2201 against Target Corporation and Target National Bank, specifically, a

declaration that the unsolicited conversions violate TILA and an order directing Defendants to cease such practices and refrain from selling or sharing the private financial information of its former customers (Count VI). Plaintiff now moves for class certification. The parties have also filed cross-motions for partial summary judgment on the TILA claims. In addition, Defendants seek summary judgment with respect to Plaintiff's state law claims and Plaintiff, in turn, has filed a cross-motion for summary judgment with respect to her state law breach of contract claim. For the reasons set forth below, Plaintiff's motion for class certification is denied, Plaintiff's motions for summary judgment are denied, and Defendants' motions for summary judgment are granted.

## FACTUAL BACKGROUND

This lawsuit involves two types of Target brand credit cards – Target Guest Cards and Target Visa Cards. Target Guest Cards are in-store credit cards that may only be used at Target stores. (Deposition of Christine Muro, Ex. A to Declaration of Garrett Boehm, Jr., hereinafter, "Pl.'s Dep.," at 80.) The Guest Cards are issued by Target National Bank, a wholly-owned subsidiary of Target Corporation formerly known as Retailers National Bank. (Plaintiff's Local Rule 56.1(a) Statement, hereinafter, "Pl.'s 56.1(a)," ¶ 3.) Upon issuance, each Guest Card is assigned a ten- or twelve-digit account number. (Defendants' Local Rule 56.1(a) Statement, hereinafter "Defs.' 56.1(a)," ¶ 11.) As part of her application, the applicant must sign a statement agreeing "to be bound by all terms and conditions of the Credit Card Agreement." (Id. ¶ 5.) Upon applying for a card, the cardholder is presented with a copy of the Guest Card's terms and conditions, (id. ¶¶ 9, 12), including a provision granting Target "the right to change this Agreement and apply those changes to the existing balance." (Target Credit Card Agreement, Ex. B to Declaration of Garrett Boehm, Jr.)

Pursuant to this language in the Guest Card Agreement, Target has been converting some Target Guest Cards into Target Visa Cards without any further consent from the cardholders. (Pl.'s

2

56.1(a) ¶ 20.) Unlike Target Guest Cards, Target Visa Cards are general purpose credit cards whose use is not limited to Target stores. (*Id.* ¶ 12.) The Visa Cards differ from the replaced Guest Cards in several other respects, as well. Specifically, they feature different sixteen-digit card and account numbers, a cash advance feature, higher credit limits, and slightly different terms and conditions.[1] (*Id.* ¶ 12; Defs.' 56.1(a) ¶ 17.) The Visa Card is not activated until the cardholder telephones an activation number. (Defs.' 56.1(a) ¶ 19.) Once a customer's Target Visa Card is activated, his Target Guest Card is immediately deactivated, and any outstanding balance is transferred from the Guest Card to the Visa Card "at the end of the billing period in which [the cardholder] activate[s] [his] Target Visa Card." (*Id.* ¶ 19; Target Visa Card Agreement, Ex. F to Declaration of Garrett Boehm, Jr.)

On April 4, 1998, Plaintiff applied for a Target Guest Card ("Guest Card") at a Target store in Cicero, Illinois. (Defs.' 56.1(a) ¶ 4.) Plaintiff's application was approved, and she received and used the Guest Card on April 4, 1998. (*Id.* ¶ 12.) Plaintiff also received a copy of the relevant Guest Card terms and conditions, discussed above. (*Id.* ¶ 9.)

In December 1999, Plaintiff paid the balance owed on her Guest Card in full. (Pl.'s Dep., at 16-17.) At some point thereafter (the date is unidentified), Plaintiff asserts, she telephoned representatives of Target National Bank (then known as Retailers National Bank) and requested that they cancel her Target Guest Card account. (*Id.* at 17-18.) According to Plaintiff, after inquiring into the reasons for her cancellation of the Guest Card, the Bank representative did close the account. (*Id.* at 18.) Plaintiff did not receive any written confirmation that her Guest Card account

---

[1]     The parties have not provided details concerning all of the changes in the respective credit card agreements but the court has no reason to believe that any of these unidentified changed terms and conditions are material here.

3

had been cancelled, (*id.*, at 19), but for the following five years, she received no communications from Target Corporation, Target National Bank, or Retailers National Bank. (Pl.'s 56.1(a) ¶ 18.)

Defendants concede that Plaintiff received no communications regarding her Guest Card from December 1999 through August 2004, but they contend that this was due to the fact that Plaintiff had paid her account off in full in December 1999 and incurred no new charges after that date. (Defendants' Response to Pl.'s 56.1(a) ¶ 18.) According to Defendants, Retailers National Bank had a practice of sending a confirmation letter when a Target Guest Card holder closed his or her account, but there is no record of any such letter being sent to Plaintiff (*see* Retailers National Bank Cancellation Form Letter, Ex. D to Declaration of Garrett Boehm, Jr.), nor any evidence, other than Plaintiff's testimony, that she cancelled her Guest Card account. (Def.'s 56.1(a) ¶ 14.)

In August 2004, Plaintiff received an unsolicited Target Visa Card in the mail. (Defs.' 56.1(a) ¶ 15.) Plaintiff did not activate the Card, nor did she contact Target to discuss the matter. (*Id.* ¶¶ 19-20.) Instead, upset at having received an unsolicited credit card, Plaintiff mentioned the incident to Michael Blumenthal, an attorney for whom she is employed as a secretary. (Pl.'s Dep., at 36.) Mr. Blumenthal suggested that she speak with David Piell, an attorney in private practice who has been involved in class action litigation. (*Id.*) On September 27, 2004, Mr. Piell filed suit on behalf of Plaintiff and a class of similarly situated individuals against Target Corporation, Target National Bank, and Target Receivables Corporation.

## DISCUSSION

Plaintiff's central claim is that Target's unsolicited issuance of Target Visa Cards to holders of Target Guest Cards violated the Truth in Lending Act, 15 U.S.C. § 1642. Section 1642 provides that "no credit card shall be issued except in response to a request or application therefor." 15 U.S.C. § 1642. The federal regulations implementing TILA provide that credit cards may not be

4

issued except (1) in response to an oral or written request or application or (2) as a renewal of, or substitute for, a previously accepted card. 12 C.F.R. § 226.12(a)(1)-(2). Plaintiff seeks to represent a class of all similarly-situated Target Guest Card holders whose Guest Cards were converted to Target Visa Cards without their express authorization.

## I.    Deferral of Class Action Ruling

As an initial matter, the court notes a concern regarding Rule 23, which directs that a decision on class certification be made as soon as is practicable after an action is brought as a class action. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). When considering a motion for class certification, the court is expected to accept as true the substantive allegations in the complaint, not to examine the ultimate merits of the action, as required on a motion for summary judgment. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981). Nevertheless, both Plaintiff and Defendants urge the court to consider at least one of the issues raised in their respective motions for summary judgment prior to reaching the class certification issue. Specifically, they seek a ruling on Defendants' argument that the issuance of a Target Visa Card as a substitution for a Guest Card is authorized by 15 U.S.C. § 1642. The parties agree that resolution of this issue will have a significant effect on the size of the potential Plaintiff class. Indeed, many of Defendants' arguments against Ms. Muro's suitability as class representative hinge on this issue and the possibility that her particular circumstances differ from those of other potential class members in areas relevant to the substitution defense.

As noted, Rule 23 dictates that courts rule on class certification "as soon as practicable." FED.R.CIV.P. 23(c). This language is ordinarily interpreted as requiring courts to decide class certification before examining the merits of the underlying claims. *Chavez v. Illinois State Police*, 251 F.3d 612, 629, 630 (7th Cir. 2001). The Seventh Circuit has recognized, however, that in certain

5

situations it may be appropriate to rule on a summary judgment motion prior to ruling on a class motion. *Id.* at 630 ("If 'as soon as practicable' occurs after a case is already 'ripe for summary judgment' then it might be proper for a judge to consider a motion for summary judgment prior to considering a motion for class certification."); *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995) ("But 'usually' is not 'always,' and 'practicable' allows for wiggle room."). In addition, the Seventh Circuit has recognized that the court should "make whatever factual and legal inquiries are necessary under Rule 23" before deciding whether a case should proceed as a class action. *Szabo*, 249 F.3d at 675.

Ms. Muro's circumstances may well differ from those of other potential class members. Specifically, Ms. Muro, unlike many, if not all, putative class members, claims to have cancelled her Target Guest Card prior to the issuance of the Visa Card. Thus, any claim by Defendants that the Visa Cards functioned as permitted substitutions of previously issued Guest Cards may fail in respect to Ms. Muro on the basis that she had previously cancelled her Card. If the issuance of the Visa Cards to valid Guest Card holders did constitute a valid substitution under Regulation Z, then Ms. Muro might nevertheless qualify, in light of this cancellation, as an adequate class representative for the presumably much smaller class of persons issued Target Visa Cards after having cancelled their Target Guest Card accounts. It is also possible that the number of persons with valid claims—i.e., those who were sent their Target Visa Cards *after* having cancelled their Target Guest Cards—is too small to support class certification. In light of this possibility, as well as the parties' apparent agreement on this course of action, the court believes it proper to consider the cross-motions for summary judgment prior to ruling on the class certification issue. *See Marx v. Centran Corp.*, 747 F.2d 1536, 1552 (6th Cir. 1984) ("To require notice to be sent to all potential plaintiffs in a class action when the underlying claim is without merit is to promote inefficiency for its own sake.").

6

In addition, the parties have already fully briefed their cross-motions for summary judgment on Plaintiff's state law claims. In light of the likelihood that consideration of these motions will have a dispositive effect on Plaintiff's motion for class certification, the court will also consider these motions prior to addressing the class certification issue.

## II.    Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Thus, "[s]ummary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003).

### A.    Truth in Lending Act, 15 U.S.C. § 1642

Plaintiff brings two counts under the federal Truth in Lending Act. In Count I, she alleges that Defendants' unsolicited issuance of Target Visa Cards to Target Guest Card holders violates § 1642 of TILA. In Count II, Plaintiff alleges that the failure of Defendants Target Corporation and Target National Bank to make appropriate disclosures in a credit card application or solicitation violated § 1637(a) & (c) of the Act. Defendants have moved for summary judgment on Count I, contending that the issuance of a Target Visa Card to Target Guest Card holders constitutes a substitution authorized by the language of the statute.

#### 1.    Substitution Exception Under TILA

The Truth in Lending Act provides that "no credit card shall be issued except in response to a request or application therefor." 15 U.S.C. § 1642. "Credit card" is defined as "any card, plate, coupon book or other credit device existing for the purpose of obtaining money, property, labor or

7

service on credit." *Id.* § 1602(k). Federal Regulation Z, drafted by the Federal Reserve Board pursuant to statutory authority,[2] provides that "[r]egardless of the purpose for which the credit card is to be used . . . no credit card shall be issued to any person except: (1) In response to an oral or written request or application for the card; or (2) As a renewal of, or substitute for, an accepted credit card." 12 C.F.R. § 226.12(a)(1)-(2). Defendants urge that the issuance of Target Visa Cards qualified as a permissible substitution of an accepted credit card.

The official commentary to Regulation Z presents several examples of permissible credit card substitutions under TILA. Specifically, the commentary states: "Substitution encompasses the replacement of one card with another because the underlying account relationship has changed in some way – such as when the card issuer has:" (1) changed its name; (2) changed the name of the card; (3) changed the credit or other features available on the account; (4) substituted a card user's name on the substitute card for the cardholder's name appearing on the original card; or (5) changed the merchant base. Official Staff Commentary, 12 C.F.R. pt. 226, Supp. I, ¶ 12(a)(2) (rev. Jan. 1, 2004). The Supreme Court has held that the official commentary "is dispositive in TILA cases unless the commentary is demonstrably irrational." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980); *Szumny v. American General Finance*, 246 F.3d 1065, 1069 (7th Cir. 2001) (describing the official commentary an "authoritative interpretation" of TILA); *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 931 n.5 (7th Cir. 1998) ("The official staff opinions of the Federal Reserve Board construing TILA and Regulation Z are binding on this court unless they are 'demonstrably irrational."). In light of this, as well as the complete absence of case law on the substitution issue,

---

[2]      TILA grants the Federal Reserve Board "expansive authority to prescribe regulations containing 'such classifications, differentiations, or other provisions,' as, in the Board's judgment, 'are necessary or proper to effectuate [TILA's] purposes . . ., to prevent circumvention or evasion thereof, or to facilitate compliance therewith.'" *Household Credit Servs., Inc. v. Pfenning*, 541 U.S. 232, 232 (2004), *quoting* 15 U.S.C. § 1604(a).

8

the language of Regulation Z bears some scrutiny. *See Milhollin*, 444 U.S. at 560 ("[I]nterpretation of TILA and Regulation Z demands an examination of their express language . . .").

Defendants contend that the issuance of Target Visa Cards to Target Guest Card holders constitutes a change in the "credit or other features available on the account," as contemplated by the third example in the official commentary. The commentary illustrates such a change: "For example, the original card could be used to make purchases and obtain cash advances at teller windows. The substitute card might be usable, in addition, for obtaining cash advances through automated teller machines." Official Staff Commentary, 12 C.F.R. pt. 226, Supp. I, ¶ 12(a)(2).

On its face, Target's practice of issuing Visa Cards to Target Guest Card holders falls within the general scope of this example of substitution: the card issuer has "changed the credit or other features on the account." The Visa Card features differ in a number of areas from those of the Guest Cards. Specifically, while the Guest Cards can be used only at Target retail stores, the new Target Visa Cards can be used anywhere Visa credit cards are accepted.[3] In addition, as discussed, the Visa Cards feature a cash advance feature, higher credit limits, and different terms and conditions than the previously issued Guest Cards.

The official commentary does, however, impose limitations on the circumstances in which such a substitution is permitted. Specifically, where the original account continues to exist after the "substitution," unsolicited issuance of the new account is prohibited:

> The substitution of one card with another on an unsolicited basis is not permissible, however, where in conjunction with the substitution an additional credit card account is opened and the consumer is able to make new purchases or advances under both the original and the new account with the new card. For example, if a retail card issuer replaces its credit card with a combined retailer/bank card, each of

---

[3]     In effect, the card features are changed from acceptance solely at Target stores to acceptance worldwide, as Visa cards are currently accepted in over 150 countries. *See* http://www.usa-visa.com/about_visa/newsroom/press_kit/quick_facts/html.

the creditors maintains a separate account, and both accounts can be accessed for new transactions by use of the new credit card, the card cannot be provided to a consumer without solicitation.

Official Staff Commentary, 12 C.F.R. pt. 226, Supp. I, ¶ 12(a)(2). The parties devote the bulk of their briefs to analysis of whether the issuance of the Visa cards falls within this exception to the substitution rule.

Defendants have been replacing the Target Guest Cards with Target Visa Cards, a combined retailer/bank card. As set forth above, such a replacement does not qualify as a valid substitution under TILA if, after the substitution, (1) each of the creditors maintains a separate account and (2) by using the new credit card, the cardholder can continue to access both accounts for new transactions. Plaintiff contends these factors are disputed. She notes that, after Target issues the new Target Visa Card, the two cards bear different account numbers and access different accounts. Defendants insist that, although the two cards have different numbers, both the new Visa Card and the old Guest Card access only a single account.[4] Defendants urge the court to construe the term "account" as applying to "a detailed statement of the debits and credits between parties to a contract or to a fiduciary relationship, a reckoning of monetary dealings, or a course of business dealings or other relations for which records must be kept." (Defendants' Response Brief, at 8, *citing* BLACK'S LAW DICTIONARY 18 (8th ed. 2004).) Under this definition of "account," Defendants argue that the cards involve only a single account, notwithstanding the two account numbers.

---

[4]     Defendants maintain that the account number appearing on the Target Visa Card differs from that on the Target Guest Card only because the Guest Card has a ten- or twelve-digit number, while the Visa Card, like all Visa credit cards, will bear a sixteen-digit account number. The court is uncertain whether this means that the Target Visa Card numbers is identical to the Target Guest Card number, with the addition of four (or six) digits, or whether the sixteen-digit account number is entirely new.

"Account" is not a term of art defined in TILA, Regulation Z, or the Official Staff Commentary. Fortunately, however, the court need not linger on this issue because it concludes that the exception Plaintiff invokes is inapplicable here for another reason. Regardless of whether the Guest and Visa Cards technically access two separate accounts, the Visa Cards, upon activation, are only able to access a single sixteen-digit Visa account. Further, as explained above, once the Visa Card is activated, the replaced Guest Card is automatically deactivated and can no longer be used to make purchases. The balance from the Guest Card is automatically transferred from the Guest Card to the Visa Card at the end of the billing period in which the Visa Card is activated. It is undisputed that at no point is the cardholder able to access more than one account for transactions by the new credit card. As a result, the issuance of Target Visa Cards to Target Guest Card holders qualifies as a valid substitution under Regulation Z and the Official Staff Commentary.

For similar reasons, the court is unmoved by Plaintiff's contention that Target's issuance of the Visa Cards runs afoul of the so-called "one-for-one rule" under TILA. The rule states, with exceptions, that "[a]n accepted card may be replaced by no more than one renewal or substitute card." Official Staff Commentary, 12 C.F.R. pt. 226, Supp. I, ¶ 12(a)(2). Plaintiff argues that the overlap between the activation of the Visa Cards and the transfer of any remaining Guest Card balance to the new account violates the one-for-one rule. Because the Guest Cards are automatically deactivated upon activation of the corresponding Visa Cards, however, the Guest Cards were not replaced by more than one card, nor were the Visa and Guest Cards ever simultaneously active.

## 2. Statutory Purpose of TILA

Having failed to establish Defendants' liability via the express language of TILA or its implementing documents, Plaintiff also makes a more general (and largely undeveloped) argument based on the legislative history and purpose underlying TILA. Specifically, she urges that the

11

acceptance of any definition of substitution "that allows a card issuer to switch cards on cardholders at the whim of the card issuer would be inconsistent with the intent of the act." (Plaintiff's Memorandum in Support of Summary Judgment, at 6.) As for the examples found in the official commentary, Plaintiff maintains that either they do not clearly establish Defendants' right to make unilateral and unsolicited substitutions or, if they do, that the commentary does not conform to the statutory purpose underlying TILA. (*Id.* at 6, 9 n.8.) To the extent that they do not, Plaintiff urges that, although the commentary's interpretation of TILA is granted "a high degree of deference" by courts, *Milhollin*, 444 U.S. at 557, such deference "does not allow a court to abdicate its obligation to examine whether the regulation or interpreting comments actually conform to a statute's purpose." (Plaintiff's Memorandum in Support of Summary Judgment, at 9 n.8.)

Indeed, the Supreme Court has recognized, given the complexity of TILA, the usefulness of considering the more general character of the legislation in interpreting the statute: "Even Regulation Z cannot, however, speak explicitly to every credit disclosure issue. At the threshold, therefore, interpretation of TILA and Regulation Z demands an examination of their express language; absent a clear expression, it becomes necessary to consider the implicit character of the statutory scheme." *Milhollin*, 444 U.S. at 560. In addition, courts have recognized that the remedial nature of the statute demands that it be construed liberally in favor of the consumer. *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 65 (11th Cir. 2004) (citations omitted); *Davis v. Werne*, 673 F.2d 866, 869 (5th Cir. 1982) (citations omitted); *In re Bumpers*, No. 03 C 111, 2003 WL 22119929, *2 (N.D. Ill. Sep. 11, 2003), *citing Rochon v. Citicorp Mortgage, Inc.*, No. 94 C 3326, 1996 WL 167056, *2 (N.D. Ill. Apr. 5, 1996). In light of these two interpretive dictates, the court addresses Plaintiff's argument briefly.

TILA was enacted with the "broad purpose of promoting 'the informed use of credit.'" *Milhollin*, 444 U.S. at 559, *quoting* 15 U.S.C. § 1601. The statute pursues this aim by assuring a "meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). Finally, the Act seeks "to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Id.* In furtherance of these goals, TILA restricts the ability of credit card issuers to issue unsolicited credit cards absent a prior contractual relationship with the would-be cardholder. Such a relationship existed between Defendants and the Target Guest Card holders (though perhaps not between Defendants and Ms. Muro, in light of her alleged cancellation of her Guest Card). In light of this relationship, TILA provides Defendants greater leeway to issue, on an unsolicited basis, credit cards to cardholders with whom it has an existing contractual relationship "in renewal or, of substitution for, an accepted credit card." 15 U.S.C. § 1642. Plaintiff has pointed to nothing in the legislative purpose or history of TILA suggesting that this is improper.

Plaintiff urges that the acceptance of any definition of substitution "that allows a card issuer to switch cards on cardholders at the whim of the card issuer would be inconsistent with the intent of the act." (Plaintiff's Memorandum in Support of Summary Judgment, at 6.) In the court's view, the examples and definition of "substitution" found in Regulation Z or the Official Staff Commentary do not allow cards to be issued to existing cardholders "at the whim of the card issuer." Rather, as discussed above, the commentary permits a card issuer to issue a substitute card in certain discrete circumstances where the account relationship has changed in some way. Plaintiff has not presented any statement of legislative history or purpose suggesting that this definition of "substitution" in the

commentary is overly expansive or "demonstrably irrational."[5] *Walker*, 155 F.3d at 931 n.5 (Official Staff Commentary is binding unless "demonstrably irrational").

As noted earlier, Plaintiff here seeks to represent a class of Target Guest Card holders who received consolidated Target Visa Cards. For the reasons explained here, the court concludes that Target's unsolicited issuance of Target Visa Cards to Target Guest Card holders qualifies as a valid substitution and therefore does not violate TILA. Significantly, although this determination may doom Plaintiff's desire for class treatment of her TILA claims, Plaintiff herself retains a valid claim because she claims to have cancelled her Guest Card prior to issuance of the Visa Card. Defendants concede, as they must, that no valid substitution can occur where the cardholder in question has previously cancelled her initial credit card account and no ongoing contractual relationship exists. In addition, Plaintiff retains a claim under § 1637 of TILA–alleging that Defendant Target National Bank opened new credit card accounts without making required disclosures–for which Defendants have not moved for summary judgment.

### B.    State Law Claims

In addition to her claims under the federal Truth in Lending Act, Plaintiff also brings a number of additional claims under state law, including breach of contract and tortious interference with business relationship. Defendants have moved for summary judgment on each of Plaintiff's state

---

[5]    Plaintiff's reliance on a pre-amendment draft version of TILA in support of a more restrictive definition of "substitution" is misplaced. The version of TILA cited by Plaintiff limited the definition of "substitution" to "a new credit card issued in substitution for an accepted card as a result of a change in the corporate structure or ownership of a card issuer." 116 CONG. REC. 11,827 (1970). This limited definition appeared in an earlier version of TILA that appeared in the Senate bill, but was removed prior to passage. The definition never appeared in the House version of TILA. Instead, the supporting regulation and commentary to the final version of TILA contains the more expansive definition and examples of substitution discussed above. "Where Congress includes limited language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." *Russello v. United States*, 464 U.S. 16, 23-24 (1983), *citing Arizona v. California*, 373 U.S. 546, 580-81 (1963).

law claims. Plaintiff, in turn, has filed a cross motion for summary judgment on her breach of contract claim.

### 1. Breach of Contract

Under South Dakota law,[6] "[a]n action for breach of contract requires proof of an enforceable promise, its breach and damages." *McKie v. Huntley*, 620 N.W.2d 599, 603 (S.D. 2000), *citing Krzycki v. Genoa Nat'l Bank*, 242 Neb. 819, 496 N.W.2d 916, 923 (1993). Defendants argue that Plaintiff has not presented evidence establishing any of these three elements.

As an initial matter, Defendants urge that Plaintiff cannot maintain a breach of contract action because she has consistently maintained that she had no contractual relationship with Defendants at the time of the alleged breach -- i.e., the substitution of the Target Visa Card for the Target Guest Card. Indeed, Plaintiff insists that she cancelled her Target Guest Card via telephone in December 1999. (Pl.'s Dep., at 17-18.) Although Defendants claim that they have no evidence of this call and deny that the account was cancelled, they argue that Plaintiff is bound by her allegations and deposition testimony. In light of her alleged cancellation, Defendants maintain that

---

[6]     Plaintiff's state law claims are before this court pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367. When deciding an issue governed by state law, "a federal court applies the forum state's choice of law rules." *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1413 (N.D. Ill. 1996), *citing Mastrobuono v. Shearson Lehman Hutton, Inc.*, 20 F.3d 713, 718-19 (7th Cir. 1994). In Illinois, courts generally follow the Restatement (Second) of Conflict of Laws in determining the governing law in a contract dispute. *Demitropoulos*, 915 F. Supp. at 1413. Under § 187 of the Restatement, an express choice of law provision in a contract will be honored unless (1) it would violate fundamental state public policy and (2) Illinois has a materially greater interest in the conflict than the chosen state. *Id.* (citations omitted); *Scentura Creations, Inc. v. Long*, 325 Ill. App. 3d 62, 69, 756 N.E.2d 451, 474-75 (2d Dist. 2001).

    In the present case, Plaintiff urges that the choice of law provision in Plaintiff's contract with Target National Bank, which states that the agreement will be governed by the law of South Dakota, should apply. (Target Credit Card Agreement, Ex. B to Declaration of Garrett Boehm, Jr., at 2.) In light of the fact that Defendants do not claim that application of South Dakota law would violate Illinois public policy, nor do they otherwise object to the application of South Dakota law, the court will apply South Dakota law in examining Plaintiff's state law claims.

15

any subsequent conduct could only be found unlawful as a violation of TILA, not as a breach of contract. (Defendants' Reply Memorandum, at 8.) In addition, Defendants urge that even if the court were to ignore Plaintiff's claim that she cancelled her Target Guest Card in 1999, and that a contractual relationship existed beyond that point, Plaintiff has still not demonstrated any damages suffered as a result of any alleged breach of that relationship.

In response, Plaintiff maintains that there were actually two breaches of contract.[7] In addition to the breach based on Defendants' substitution of a Target Visa Card for Plaintiff's Target Guest Card, Plaintiff asserts that Defendants' failure to close Plaintiff's account upon her request in 1999 constituted a second breach of contract. Specifically, Plaintiff alleges that Defendants' failure to cancel the Guest Card account violated the section of the Target Guest Card agreement entitled "Our Rights." Yet Plaintiff has not identified any particular language in this section that renders the failure to cancel her Card a breach. Instead, Plaintiff contends that her "decision not to pursue the breach of contract claim for failing to close the account does not destroy or limit her ability to pursue her claim for breach of contract in converting and expanding the account." (Plaintiff's Sur-Response, at 10.)

Plaintiff cannot have it both ways. As explained above in the court's analysis of Plaintiff's federal law claim, the court concludes that the issuance of Target Visa Cards to existing Target Guest Card account holders did not violate TILA. Thus, Plaintiff can prevail here, if at all, only

---

[7]     Plaintiff also complains that Defendants did not raise this argument (that Plaintiff had denied the existence of a contract) in its initial motion for summary judgment, but rather first presented the issue in its reply brief. Plaintiff has, however, had an opportunity to respond to this new argument in a sur-reply, and the court is therefore inclined to address it. *Cf. Petri v. Gatlin*, 997 F. Supp. 956, 977 (N.D. Ill. 1997) (considering arguments first raised in defendant's reply brief would be unfair because "the plaintiffs have not had an opportunity to respond to them").

because she allegedly cancelled her Target Guest Card prior to the substitution of the Target Visa Card.

In any event, even if the court were to disregard Plaintiff's assertion that she cancelled her Target Guest Card, Plaintiff has offered no evidence that she suffered any damages as a result of the unsolicited substitution of a Target Visa Card for her Target Guest Card. As noted, proof of damages is an element of a breach of contract claim under South Dakota law. Under South Dakota law, the measure of damages for a breach of contract is

> the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin.

S.D. CODIFIED LAWS § 21-2-1. Plaintiff has not identified any damages proximately caused by the Visa Card substitution. She suggests that the statutory damages available under 15 U.S.C. §§ 1637 and 1642 constitute a measure of her contract damages, but the court is unpersuaded. First, Plaintiff has cited no case law for the proposition that federal statutory damages are alone sufficient to satisfy the damages element of a state law breach of contract claim. Second, as discussed above, Plaintiff's TILA claim and state law breach of contract claim are mutually exclusive. If the court were to find that Plaintiff had not cancelled her Guest Card in December 1999, and that a contractual relationship remained in place at the time of the substitution, then the complained-of substitution would not constitute a violation of TILA. Only if, as she claims, Plaintiff did indeed cancel her Guest Card prior to the substitution, can she maintain a TILA claim. Thus, even if the statutory

damages under TILA were sufficient to satisfy the damages element, they cannot do so in this case.

## 2. Tortious Interference

Plaintiff also brings a state law claim for tortious interference with a business relationship against Defendant Target Corporation. Plaintiff alleges that Target Corporation "directed its wholly owned subsidiary [Target National Bank] to convert Target Guest Card accounts into Target Visa accounts and issue new credit cards to access the new accounts." (Plaintiff's Am. Class Action Compl., Count IV.) In doing so, Plaintiff claims that Target Corporation interfered with her business relationship with its wholly owned subsidiary Target National Bank, the issuer of both the Target Guest Cards and Target Visa Cards.

Under South Dakota law, a plaintiff claiming tortious interference with a business relationship must show: (1) the existence of a valid business relationship; (2) knowledge by the interferer of the relationship; (3) an intentional and unjustified act of interference; (4) proof that the interference caused the harm sustained; and (5) damage to the party whose relationship was disrupted. *St. Onge Livestock Co. v. Curtis*, 650 N.W.2d 537, 541 (S.D. 2002), *citing Tibke v. McDougall*, 479 N.W.2d 898, 908 (S.D. 1992).

The parties have spilled much ink on the question of whether Target Corporation's actions violated Plaintiff's contractual relationship with Target National Bank, rendering its actions "unjustified." The court need not examine this issue because Plaintiff has again failed to present any evidence of damages stemming from the alleged tortious interference. On this point, Plaintiff claims that the substitution "interfered with [Plaintiff's] ability to continue to have a Target Guest Card, with its fixed interest rate, lower fees and limited ability to damage cardholder's credit." (Plaintiff's Reply Brief, at 12.) Plaintiff fails to explain, however, how she was damaged by this inability to retain the Target Guest Card when she insists that she cancelled her Guest Card account in December

18

1999. Having done so, she cannot now complain that Target Corporation's actions years later interfered with her ability to retain that card. Defendants' motion for summary judgment is granted.

### 3.    South Dakota Codified Law § 55-1-8

Finally, Plaintiff brings a claim under South Dakota Codified Law § 55-1-8. This statute provides that "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it." S.D. CODIFIED LAWS § 55-1-8. Plaintiff alleges that Defendant Target National Bank transfers all or substantially all of its receivables into a trust maintained by Defendant Target Receivables Corporation and that "[b]y wrongfully converting Target Guest Card accounts into Target Visa accounts, Defendant [Target Receivables Corporation] received a windfall of fees and interest payments that [Target National Bank] was not entitled to." (Plaintiff's Am. Class Action Compl., Count V.) Plaintiff now claims that she (and other class members) have been damaged by Target National Bank's wrongful conduct and are entitled to restitution from Target Receivables Corporation.

Again, Plaintiff has failed to explain how Defendants' proposed conversion of her Target Guest Card account into a Target Visa Card damaged her in any way, or correspondingly, benefitted Defendants in any way. In order to maintain a claim under § 55-1-8, a plaintiff must demonstrate that the defendant has "gain[ed] a thing." *Matter of Estate of Jahnel*, 428 N.W.2d 528, 533 (S.D. 1988). Under basic common law principles, a trust "does not come into existence until the settlor identifies an ascertainable interest in property to be the trust res." 76 AM. JUR. 2D *Trusts* § 47 (2004). Thus, the identification of trust property is a basic requirement for the creation of a trust. *Id.* Plaintiff has not presented any evidence that Defendants gained any money or property through their

19

issuance to her of a Target Visa Card. Plaintiff did not activate the Target Visa Card issued to her and owed no outstanding balance on the Guest Card, which she had assertedly cancelled years earlier. Thus, neither Target National Bank nor Target Receivables Corporation benefitted in any way from its issuance. Absent such a gain, there is no property in which a trust can be created.

In light of the above, the court will address Plaintiff's motion for class certification with respect to Plaintiff's remaining TILA claims.

## II. Class Certification

Plaintiff has moved for class certification with respect to her two TILA claims, as well as her state law breach of contract claims. As discussed above, the court has granted Defendants' motion for summary judgment with respect to Plaintiff's state law claims. As a result, the court need not address the class certification issue as to those claims. In addition, Defendants have yet to respond to Plaintiff's "Second Amended Motion for Class Certification," in which Plaintiff argued for the first time in favor of class certification with respect to her § 1637(a) and (c) claim (alleging that Defendant Target National Bank opened new credit card accounts without making the required disclosures under TILA), and her breach of contract claims. Defendants' failure to respond to this motion may be explained by the deluge of (often repetitive) motions which Plaintiff has filed during the course of this litigation. In any event, the court will reserve ruling on class certification of Plaintiff's § 1637 claim pending Defendants' response. Thus, the court's discussion here is limited to Plaintiff's motion for class certification of her claim under § 1642.

A court has broad discretion to determine whether certification of a class is appropriate under Federal Rule of Civil Procedure 23. *Chavez v. Illinois State Police*, 251 F.3d 612, 629 (7th Cir. 2001), *citing Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997). To obtain class certification, Plaintiff must establish the four prerequisites in Rule 23(a): (1) the class is so numerous

20

that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequate representation). *See Williams v. Chartwell Financial Servs., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000), *citing* FED. R. CIV. P. 23(a). In addition, if a plaintiff meets all of the 23(a) requirements, she must next satisfy one of requirements set forth in Rule 23(b). *Williams*, 204 F.3d at 760; *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). In this case, Plaintiff seeks certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

Because Plaintiff has not established numerosity, the court need not address the remaining requirements under Rule 23. Plaintiff defines the proposed class as "All persons who were mailed a 'Target Visa' card by Target without first requesting or applying for said card, including Target Guest Card cardholders who received a 'Target Visa' without requesting a 'Target Visa.'" (Plaintiff's Amended Memorandum in Support of Plaintiff's Motion for Class Certification, at 2.) For the reasons discussed earlier, however, the court believes the proposed class is more appropriately defined as "All persons who were mailed a Target Visa Card without first requesting or applying for said card, and who did not at the time hold any active Target-branded credit card, including Target Guest Card holders who had cancelled their Guest Card prior to issuance of the Target Visa card."

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *See Williams*, 204 F.3d at 760. Although there is no "magic number" for numerosity, "permissive joinder is usually deemed impracticable where the class members number 40 or more."

*Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 307 (N.D. Ill. 1995) (citations omitted). "The exact number of class members need not be pleaded or proved, but impracticability of joinder must be positively shown, and not merely speculative." *Keele v. Wexler*, No. 95 C 3483, 1996 WL 124452, *3 (N.D. Ill. Mar. 19, 1996), *aff'd* 149 F.3d 589 (7th Cir. 1998).

In her reply brief, Plaintiff states that Target records reveal that at least 7,238,240 Guest Card holders have received an unsolicited Target Visa Card. (Plaintiff's Reply Memorandum in Support of Plaintiff's Second Amended Motion for Class Certification, hereinafter Plaintiff's Certification Reply Brief, at 4 n.6.) Of these, at least 1,392,393 received their Visa Card after September 27, 2003, within TILA's one-year statute of limitations period. 15 U.S.C. § 1640(e); *Jenkins v. Mercantile Mortgage Co.*, 231 F. Supp. 2d 737, 745 (N.D. Ill. 2002). Plaintiff has not, however, offered any evidence of other persons who, like Ms. Muro, cancelled their Guest Cards prior to the substitution. For their part, Defendants "know of no others" falling into this category. (Defendants' Class Certification Brief, at 4.) Nor has Plaintiff offered any evidence that any other non-Target-cardholders were sent an unsolicited Target Visa Card. Absent this information, Plaintiff cannot establish that joinder is impracticable. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) ("[P]laintiffs are not required to specify the exact number of persons in the class, but cannot rely on conclusory allegations that joinder is impracticable or on speculation as to the size of the class in order to prove numerosity.") (internal citations omitted).

## CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment on Plaintiff's state law claims (Doc. No. 61-1) and motion for partial summary judgment on Plaintiff's § 1642 claim (Nos. 41-1, 42-1) are granted. Plaintiff's cross-motions for summary judgment on Plaintiff's TILA claim (No. 15-1) and breach of contract claim (No. 75-1) are denied. In addition, Plaintiff's

22

motion for class certification (No. 5-1) is denied and second amended motion for class certification (No. 17-1) is denied in part. Going forward, Plaintiff retains individual claims under §§ 1642 and 1637(a) and (c) of TILA, as well as a claim for declaratory judgment under 28 U.S.C. § 2201. On or before August 5, 2005, Defendants are hereby directed to respond to Plaintiffs' motion for class certification with regard to her claim under 1637(a) and (c).

ENTER:

Dated: July 15, 2005

REBECCA R. PALLMEYER
United States District Judge