UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE MURO, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 04 C 6267 |
| v. | ) ) ) | Judge Rebecca R. Pallmeyer Magistrate Judge Geraldine Soat Brown |
| TARGET CORPORATION, TARGET NATIONAL BANK, N.A., AND TARGET RECEIVABLES CORPORATION | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court is Plaintiff's Motion to Compel Production of Documents Recently Disclosed as Being Withheld Under a Claim of Privilege ("Pl.'s Mot. Compel"). [Dkt 216.] After reviewing the parties' submissions, as well as conducting an *in camera* inspection of the 89 documents the defendants withheld from discovery pursuant to the attorney-client privilege, the court grants the plaintiff's motion insofar as the defendants will be required to supplement their privilege log. This Memorandum Opinion and Order sets out the reasons for the court's decision.

## FACTUAL BACKGROUND

The plaintiff filed this lawsuit claiming that the defendants Target Corporation and Target National Bank (collectively, "Target") violated the Truth in Lending Act by systematically

1

converting Target guest cards into unsolicited credit cards and by failing to make mandatory disclosures in a credit card application or solicitation.

Throughout this lawsuit, the parties have spent considerable time and resources engaging in discovery battles. Included in their discovery disputes is Target's refusal to produce certain documents it deems are privileged attorney-client communications. Following the plaintiff's fourth motion to compel production of documents [dkt 157], by Minute Order dated December 22, 2005, this court directed Target to produce a log in compliance with the requirements of Rule 26 as described in *Allendale Mut. Ins. Co v. Bull Data Sys., Inc.*, 145 F.R.D. 84 (N.D. Ill. 1992). [Dkt 187.]

Target produced the privilege log at issue here, identifying 89 documents that are ostensibly protected from discovery. The privilege log lists the document's date, a description and/or title of the document, the document's author, recipient and copyees, the source file from which the document was located, and the privilege claimed. The descriptions in each category are lacking factual detail. For example, with respect to the document's author, recipient and copyees, the log includes only the name, and not the capacity of each individual or whether the individual is an attorney. Under the category of privilege claimed, each document entry simply states "attorney-client" without any explanation of why the document is privileged.

Following a hearing on the motion, the court directed Target to produce copies of the 89 documents identified on the privilege log for an *in camera* inspection. [Dkt 223.] Target included a cover letter with its production, identifying the names of certain attorneys and a paralegal who are included as either author, recipient or copyee on the log. [Dkt 234.]

The present dispute relates to the 89 documents that the plaintiff sought in discovery, but that

Target withheld from production under a claim of attorney-client privilege. The plaintiff challenges Target's assertion of the privilege generally, arguing that Target's log fails to meet the basic requirements of Fed. R. Civ. P. 26(b)(5) and the standard set forth in *Allendale*, and that Target's "extremely tardy production" of its privilege log precludes it from asserting the privilege. (Pl.'s Mot. Compel at 4-6.) The plaintiff also attacks the application of the privilege to specific documents, arguing that the alleged confidentiality of the communication was compromised because it was shared with a large number of people; that an attorney either was not involved in the communication or was merely copied in the chain of communication; and that the documents and/or the subject matter contained in the documents were already produced thereby waiving the privilege. *Id.* at 7-11.

Though the parties strongly dispute the date and timeliness with which Target produced the privilege log, the court will focus only on the adequacy of the privilege log and the extent to which the 89 documents fall within the scope of the attorney-client privilege.[1]

**LEGAL STANDARDS**

---

[1]The parties dispute the date on which Target produced the log. The plaintiff maintains that the log was not produced until February 28, 2006, well after Target's production of documents and after the close of discovery. Thus, the plaintiff argues that Target waived any claim of privilege. (Pl.'s Mot. Compel at 1-3, 5-6 .) Target argues, conversely, that it produced the log on June 20, 2005, and simply reproduced it on February 28, 2006, without edits or modifications. According to Target, the plaintiff's motion to compel is untimely, and the plaintiff has waived any right to challenge the sufficiency of the privilege log. (Defs.' Opp'n. at 7-9.) [Dkt 219.] By Minute Order dated April 6, 2006, the court rejected the parties' respective arguments of waiver, and advised the parties of its intent to review *in camera* the documents listed on the privilege log. [Dkt 223.] Accordingly, this memorandum will not address either parties' arguments as to the timeliness of the other side's actions.

3

The attorney-client privilege protects confidential communications made by a client to his lawyer "[w]here legal advice of any kind is sought ... from a professional legal advisor in his capacity as such." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (quoting 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev. 1961)). The privilege also extends to statements made by the lawyer to the client where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client. *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000). *See also United States v. DeFazio*, 899 F.2d 626, 635 (7th Cir. 1990) (privilege applies to communications made by an attorney to a client that constitute legal advice or tend to reveal a client confidence).

The mere assertion of a privilege is not enough. Rule 26(b)(5) requires that the withholding party make the claim of privilege expressly and "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). Indeed, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements, which have been summarized as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Evans*, 113 F.3d at 1461 (citing Wigmore, Evidence § 2292).

"A claim of privilege cannot be a blanket claim, but must be made and established on a document-by-document basis." *Allendale*, 145 F.R.D. at 86. To that end, the asserting party must

4

produce a privilege log that identifies for *each* separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged. *Id.* at 88. This information must be sufficiently detailed to allow the court to determine whether the party asserting the privilege has discharged its burden of establishing the applicability of the privilege. *Id.*

Analyzing the applicability of the privilege is more complex in the context of a corporate client. Indeed, where the client is a corporation, the privilege, once established, can be waived if the communications are disclosed to employees who did not need access to the communication. *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, No. 84 C 5103, 1987 WL 12919 at *5 (N.D. Ill. June 19, 1987).[2] To determine the scope of the privilege with a corporate client, the Seventh Circuit applies the "subject matter" test. Pursuant to the "subject matter" test, an employee of a corporation is sufficiently identified with the corporation so that his communication to the corporation's attorney is privileged where the "employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment." *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 491-492 (7th Cir. 1970), *aff'd*, 400 U.S. 348 (1971). Simply including an attorney in a communication will not render an otherwise discoverable document protected by the privilege. "[T]he courts will not permit the corporation to merely funnel papers through the attorney in order

---

[2]Because the plaintiff's claims arise under federal law, the federal common law of privilege applies. Fed. R. Evid. 501.

to assert the privilege." *Sneider v. Kimberly-Clark Corp.,* 91 F.R.D. 1, *4 (N.D. Ill. 1980) (citing *Radiant Burners, Inc. v. American Gas Assn.*, 320 F.2d 314, 324 (7th Cir. 1963)).

Likewise, the attorney-client privilege excludes from its scope even confidential communications with a lawyer about business or other non-legal matters. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) (stating that "[f]ederal law extends the privilege to communications about legal subjects, and it is hard to see why a business evaluation meets that description"); *Rehling*, 207 F.3d at 1019 (attorney-client privilege is limited to situations in which the attorney is acting as legal advisor and not in business capacity); *Sneider*, 91 F.R.D. at *4 (stating that "attachments containing business, not legal information, cannot be privileged").

## ANALYSIS

Even before the court conducted its *in camera* inspection, one thing was clear: Target's privilege log fails to meet the requirements of Rule 26 as described in *Allendale*. The entries are inadequate to establish the applicability of the privilege, and provide the plaintiff and the court with little assistance in making that determination. Most strikingly, the identity of any attorney is absent from the log. Likewise, in describing each document on its privilege log, Target merely copied the information contained in the subject line of the underlying e-mail document. Target's method of cutting and pasting does not satisfy its obligation to describe the nature of the document adequately.

Notwithstanding the deficiencies of the privilege log, the court reviewed *in camera* the 89 documents listed on Target's privilege log, and made a determination of each document's status

based on the information provided by the parties to the court.[3] That determination was made in light of the legal standards set out above, including the fact that the burden is on Target as proponent of the privilege.

The review showed that the majority of the documents might be properly classified as privileged communications provided that Target supplements the privilege log with additional facts. The remaining documents show no basis for protection by the privilege regardless of whether Target supplies additional information. Accordingly, the documents fall into two categories: (A) documents that may be withheld as privileged pending Target's supplementation of additional factual information; and (B) documents that are not protected even with additional information. Each category will be discussed in turn.

**A.     Documents That May Be Protected by the Attorney-Client Privilege**

The following groups of documents may qualify for the privilege pending Target's provision of additional factual information. Specifically, these documents, which consist almost entirely of copies of e-mail communications, appear to have been disseminated to an unidentified group of recipients ostensibly within the corporation. While the documents on their face reveal the names of the author, recipients and copyees, the privilege log does not supply the requisite factual background to assist the court in determining whether the privilege was maintained.

In order to maintain the confidentiality that is essential to privileged status, the distribution

---

[3]The documents reviewed by the court were not Bates numbered, but were identified on the privilege log according to the date the document was created. To aid the court in identifying the documents at issue, the court will use the numbers assigned by the plaintiff in the Declaration of David J. Piell, dated March 13, 2006.  [Dkt 225.]

of a communication must be restricted. Communications reflecting a large recipient pool -- particularly when the privilege log is void of any factual detail as to the capacities in which those individuals were included in the information chain -- do not evidence an intention to create and guard a confidential and privileged communication. Therefore, in those instances where there are multiple recipients of an e-mail communication, Target must demonstrate that the distribution of the communication in no way diminished the requisite expectation of confidentiality.

Based on their content, those documents can be categorized into several groups.

(1)     Communications Clearly Designated as Privileged

Several documents identified on the log consist of chains of e-mails where portions are expressly designated as privileged: "Attorney-Client Privileged Communication. Do Not Forward Without Author's Consent". While this caption appears intended to cloak the communication with the protection of the attorney-client privilege, Target still needs to establish the identity of those individuals included in the chain of communication, and that their receipt of the communication did not compromise its confidentiality. These documents are:

6, 35, 36, 37

(2)     Communications for the Purpose of Obtaining Legal Advice

The following documents are e-mail communications seemingly between Target's in-house counsel and unidentified corporate employees that include either a request for information necessary to formulate a legal opinion and/or the conveyance of a legal opinion. In order to establish the privilege, Target must provide supplemental factual detail as to the identity of those individuals included in the communication, and to show that their receipt of the communication did not compromise its confidentiality. These documents are:

14, 15, 18, 20, 21, 28, 39

   (3)   Conveyance/Dissemination of Legal Opinion Given or Discussion of Legal Advice

This group of documents includes communications that identify and discuss legal issues that the defendant corporations are confronting in the operation of their business. The e-mail communications convey legal advice and may or may not include an attorney in the communications. However, the lack of any participation by an attorney as either author or recipient does not necessarily undermine the applicability of the privilege. It is enough that the notes reveal, directly or indirectly, the substance of a confidential attorney-client communication. *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 433 (N.D. Ill. 2006). Again, in order to maintain the privilege, Target must supplement its log with factual information as to the identity of those individuals included in the communication, and to show that their receipt of the communication did not compromise its confidentiality. The documents in this category are:

   5, 7, 12, 24, 25, 26, 31, 32, 33, 34, 38, 47, 49, 50, 52, 54, 55, 60

The following documents also contain a discussion among employees of legal advice given, but the discussion appears to gradually turn to non-legal, business-related considerations. While communications for the purpose of obtaining legal advice and the corresponding conveyance of that legal advice is protected, subsequent communications that evolve into business discussions are not. *See Burden-Meeks*, 319 F.3d at 899; *see also Sneider*, 91 F.R.D. at *4. Target must either turn over the following documents in their entirety or produce them in a redacted form, along with the requisite factual detail to demonstrate why the redacted information is protected by the privilege:

   3, 4, 59, 64, 65, 66, 67, 68, 69, 70, 71

(4) Legal drafting/editing of text

These documents relate to the drafting, review or editing of corporate documents by in-house counsel. In addition to the issue of whether the privilege was waived by the dissemination of the communication to a large number of individuals, it is unclear if the attorney is acting in a business or legal capacity. In addition, many of these e-mail documents contain attachments. Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a privileged communication with the attorney. To permit this result would "abrogate the well-established rule that only the communications, not underlying facts, are privileged." *Sneider,* 91 F.R.D. at *4 (citing 2 J. Weinstein and M. Berger, Weinstein's Evidence, § 503(b)(04) at 503-37 (1976)). Attachments containing business, not legal information, cannot be privileged. Here, Target must establish that the confidentiality of the communication was maintained despite its distribution to various individuals, that the communication involved legal, non-business-related matters, and that the privilege applies independently to each attachment. These documents are:

8, 9, 10, 11, 16, 17, 29, 30, 72, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86

The following documents also relate to the drafting, review or editing of corporate documents by in-house counsel, but then evolve into business-related discussions. In addition to establishing the information necessary for the privilege to attach, Target must also demonstrate why the following documents should not be produced in a redacted format:

40, 41, 42, 43, 44, 73

**B.      Documents That Do Not Appear to be Protected by the Privilege**

Upon review, the following documents appear to be non-legal, business-related documents which fall outside the ambit of the privilege's protection. The attorney-client privilege excludes from its scope even confidential communications with a lawyer about business or other non-legal matters. *Burden-Meeks,* 319 F.3d at 899; *see also Sneider*, 91 F.R.D. at *4. In addition, many of the following documents are cover letters forwarding attachments. The attachments, like the primary document, need to meet the privilege standard to be withheld from discovery. Those documents are:

1, 2, 13, 19, 22, 23, 27, 45, 46, 48, 51, 53, 56, 57, 58, 61, 62, 63,[4] 87, 88, 89

**CONCLUSION**

For the reasons set out above, the court concludes that Target has failed to satisfy its burden of providing the factual information necessary to sustain the privilege. Target's privilege log does not conform to the requirements set out in *Allendale* and as required by the court. The court cannot discern from the face of each document that the information contained therein is privileged, and the limited information provided in the privilege log does not assist the court in making that determination. Although Target should have known that this level of information would not be sufficient to sustain its burden in establishing the attorney-client privilege, because waiver is disfavored, and because many of the documents appear on their face to qualify for the privilege, the court will give Target one more opportunity to demonstrate the privileged nature of the

---

[4]Document Nos. 58, 62 and 63, as well as 57 and 61 are exact duplicates of one another (though from different source files).

11

communications of the documents identified in Section A above.

By December 19, 2006, Target shall file and serve a supplement to its privilege log that provides:

(a) with respect to the documents identified in Section A:

1. Factual information for each individual identified on the privilege log, including his or her position and whether he or she is an attorney; a detailed description of the subject matter of each document; and an explanation of why the document is privileged. While potentially burdensome, complying with the requirements described in *Allendale* will provide this court and the parties with a more complete understanding of the nature of the communication, and whether the participants had an expectation of confidentiality. Without that information, the court is unable to make a conclusive decision on the applicability of the privilege; and

2. Where appropriate, an explanation why the privilege attaches to an entire document, and not just a portion. If the privilege attaches only to a portion of a document, the document shall be produced with the privileged portion redacted; and

(b) with respect to the documents identified in Section B, a factual basis for the assertion of privilege with respect to each document.

Failure to provide this supplemental information will result in an order requiring Target to produce in full any documents not so supported.

IT IS SO ORDERED.

_____
GERALDINE SOAT BROWN
United States Magistrate Judge

DATED: November 28, 2006