UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE MURO, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 04 C 6267 |
| v. | ) ) ) | Judge Rebecca R. Pallmeyer<br>Magistrate Judge Geraldine Soat Brown |
| TARGET CORPORATION, TARGET NATIONAL BANK, N.A., AND TARGET RECEIVABLES CORPORATION | ) ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court is Plaintiff's Second Motion to Compel the Production of Documents Being Withheld Under a Claim of Privilege ("Pl.'s Mot. Compel"). [Dkt 240.] After reviewing the plaintiff's motion and the defendants' revised privilege log, as well as conducting another *in camera* inspection of the documents the defendants withheld from discovery pursuant to a claim of attorney-client privilege, the court grants the plaintiff's motion for the following reasons.

1

# BACKGROUND[1]

The present dispute involves documents the defendants Target Corporation and Target National Bank (collectively, "Target") withheld from discovery under a claim of attorney-client privilege. The plaintiff argues, *inter alia*, that the privilege log is inadequate and requests an order compelling Target to produce the documents.

Those documents have been the subject of a prolonged discovery dispute. Following the plaintiff's fourth motion to compel production of documents [dkt 157], Target was ordered to produce a privilege log in compliance with Rule 26 as described in *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84 (N.D. Ill. 1992). (Order, Dec. 22, 2005.) [Dkt 187.]

In an attempt to comply with the December 22, 2005 Order, Target produced a privilege log identifying 89 documents ostensibly protected from disclosure under the attorney-client privilege. In response, the plaintiff filed her Motion to Compel Production of Documents Recently Disclosed as Being Withheld Under a Claim of Privilege [dkt 216], and the court directed Target to produce copies of the 89 documents identified on the privilege log for an *in camera* inspection [dkt 223.]

Even before the court conducted its *in camera* inspection, the inadequacies of Target's privilege log were apparent. Although the privilege log contained the requisite categories of information, the descriptions were void of factual detail. The entries failed to include even basic information such as the identity of an attorney claimed to have been part of the communication. In describing each document on its privilege log, Target merely cut and pasted the information

---

[1] A detailed discussion of the factual and procedural background of this matter is set forth in the November 28, 2006 Memorandum Opinion and Order ("November 28, 2006 Order") [dkt 237]. *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181 at *1-2 (N.D. Ill. Nov. 28, 2006) (Brown, M.J.). This opinion addresses only those facts relevant to the present dispute.

contained in the subject line of the underlying documents – most of which are copies of e-mail correspondence.

Notwithstanding the deficiencies of the privilege log, the court reviewed *in camera* the documents listed on Target's privilege log and concluded that Target had failed to satisfy its burden of providing the factual information necessary to sustain the privilege. (*See* November 28, 2006 Order.) As observed in the November 28, 2006 Order, the entries on Target's privilege log were "inadequate to establish the applicability of the privilege, and provide[d] the plaintiff and the court with little assistance in making that determination." (*Id*. at 6.) Because waiver of attorney-client privilege is not a favored result, however, Target was granted one more opportunity to demonstrate the privileged nature of the communications. (*Id*. at 12.)

The November 28, 2006 Order specified the information Target would need to provide in order to meet its burden. Specifically, Target was reminded of its obligation to establish both the identity of those individuals included in the chain of communication and the fact that their receipt of the communication did not compromise its privileged status. (*Id*. at 8, 9, 10 and 12.)

In response to the November 28, 2006 Order, Target produced the revised privilege log at issue here. [Dkt 239.] The log identifies 89 documents.[2] The documents at issue are chains of e-mail communications among Target employees.[3]

---

[2] Target has withdrawn its claim of privilege for 10 of the 89 documents identified on its privilege log. Accordingly, the court presumes that Target has already produced Documents 13, 19, 45, 46, 48, 51, 53, 87, 88 and 89.

[3] Four documents are not e-mails (Documents 1, 2, 53 and 89), but none of them are privileged. Document 1 is a memorandum from a Target employee to an in-house lawyer. It is simply a cover memorandum describing the content of two enclosed folders. No legal advice is sought or discussed. Document 2 is a meeting agenda. The privilege log does not identify an author or list any addressees, states that the document includes handwritten notes by a lawyer,

Some include an attorney, while many do not. The major difference between this log and its predecessor is the inclusion of the job title of the author and recipient(s) of each communication and whether that individual is an attorney. Notably, Target did not submit an affidavit explaining the significance of the job titles. With respect to documents consisting of a string or chain of e-mail communications, Target simply identified those individuals who were party to the last message in time. In addition, Target recycled the same six to seven formulaic descriptions of the privileged nature of the document. (*See* Pl.'s Mot. Compel at 8-11.)

The plaintiff says that she filed the present motion "in light of the Defendants' continued failure to produce a privilege log that meets standards set forth in Fed. R. Civ. P. 26(b)(5), *Allendale* or this Court's very detailed memorandum opinion and order of November 28, 2006." (*Id*. at 1.)

At the hearing on the motion, the court gave Target an opportunity to file a response to the plaintiff's motion. Target declined, opting instead to rest on the revised privilege log.

## LEGAL STANDARDS

While general principles of attorney-client privilege are well-established, the application of those principles in the context of e-mail communications in a large corporation like Target is a relatively new challenge.[4] The attorney-client privilege protects confidential communications made

---

and that a clean copy of the document without the handwritten notes is identified as Document 89. The copy of Document 2 submitted to the court does not, however, contain any handwritten notes, and bears no resemblance to Document 89. Nevertheless, Document 2 as submitted to the court contains no legal advice either sought or given and, as such, is not privileged. Target withdrew its claim of privilege with respect to Documents 53 and 89. (*See supra* n. 2.)

[4] *See* Jennifer M. Moore & Gregory S. Kaufman, *Discovery Can Get Tangled Up in 'Strings': It's Not Yet Clear How Privileges Should Apply to E-Mail Exchanges*, 29 Nat'l L.J. 17

by a client to his lawyer "[w]here legal advice of any kind is sought . . . from a professional legal advisor in his capacity as such . . . ." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (quoting 8 John Henry Wigmore, *Evidence in Trials at Common Law* § 2292 (John T. McNaughton rev. 1961) (hereinafter "Wigmore, Evidence § ___")). The purpose of the privilege is to "encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "[B]ecause the privilege is in derogation of the search for the truth, it is construed narrowly." *Evans*, 113 F.3d at 1461 (citations omitted). *See also United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) ("The scope of the privilege should be 'strictly confined within the narrowest possible limits.'") (quoting 8 Wigmore, Evidence § 2291).

The mere assertion of a privilege is not enough to establish the privilege. Rule 26(b)(5) requires that the withholding party make the claim of privilege expressly and "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). Indeed, a party that seeks to

---

(Dec. 4, 2006). As one court observed:

> [M]any, if not most, e-mail strands present unique issues . . . . First, e-mail strands may span several days . . . . Second, the individuals receiving or being copied on the e-mails within a strand [may –] and usually do – vary . . . . Third, one e-mail within a strand in which counsel are senders, recipients, or being copied may contain entirely factual and thus non-privileged information, while another e-mail within the same strand may quite clearly seek or render legal advice.

*In re Universal Service Fund Telephone Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005).

5

invoke the attorney-client privilege has the burden of establishing all of its essential elements, which have been summarized as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Evans*, 113 F.3d at 1461 (quoting 8 Wigmore, Evidence § 2292). The purpose of the communication must be the obtaining or providing of legal advice, not a business discussion. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). The proponent of the privilege has the burden of demonstrating not only that the original communication was made with the expectation of confidentiality, but also that the confidential nature of the communication was not compromised by disclosure to individuals outside the attorney-client relationship. *See Jenkins v. Bartlett*, --- F.3d ---, No. 06-2495, 2007 WL 1174848 at *6 (7th Cir. Apr. 23, 2007) (Ripple, C.J.) (stating that "ordinarily, statements made by a client to his attorney in the presence of a third person do not fall within the privilege, even when the client wishes the communication to remain confidential, because the presence of the third person is normally unnecessary for the communication between the client and his attorney") (citing *Evans*, 113 F.3d at 1462).

As the parties were reminded in the November 28, 2006 Order, for communications within a corporation to be protected as privileged, the proponent must demonstrate that each individual who participated in the communication is sufficiently identified with the corporation. (*See* November 28, 2006 Order at 5 (citing *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 491-492 (7th Cir. 1970), *aff'd*, 400 U.S. 348 (1971))). An employee is sufficiently identified with the corporation so that his communication to the corporation's attorney is privileged where the "employee makes the

communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment." *Id. See also Sylgab Steel & Wire Corp. v. Imoro-Gateway Corp.*, 62 F.R.D. 454, 456 (N.D. Ill. 1974) (stating that "[i]t is well settled that the dissemination of a communication between a corporation's lawyer and an employee of that corporation to those employees *directly concerned* with such matters does not waive the attorney-client privilege" (emphasis added)), *aff'd* 534 F.2d 330 (7th Cir. 1976); *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, 1995 WL 557412 at *1 (N.D. Ill. Sept. 19, 1995) (Kocoras, J.) (same) (citing *Sylgab*).

Accordingly, the privilege once established can be waived if the communication is shared with corporate employees who are not "directly concerned" with or did not have "primary responsibility" for the subject matter of the communication. *See Sylgab*, 62 F.R.D. at 456; *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84 C 5103, 1987 WL 12919 at *5 (N.D. Ill. June 19, 1987) (Bucklo, M.J.) (stating that "[w]here the client is a corporation, the privilege is waived if the communications are disclosed to employees who did not need access to the communication"). Target's assertion of privilege is analyzed in light of those standards.

## ANALYSIS

For the reasons set out below, Target has failed to carry its burden of demonstrating that the allegedly privileged communications were made with an expectation of confidentiality and that the confidential nature of the communications was maintained by distribution of the communications to only those employees who were directly concerned with the matters contained therein.

## A. Failure to provide information required by Rule 26.

An initial problem arises from Target's failure to identify and describe separately on its privilege log each allegedly privileged message within a string of e-mail communications. Target's documents are typical electronic communications, consisting of the text of the sender's message (the top, or last, e-mail message) as well as prior e-mails that have been forwarded on in the chain (or strand, string, or thread) of an on-going, electronically-memorialized dialogue. Persons who were not sent the earliest message might be added along the way, and others who received earlier messages might or might not be sent the last one. Target's privilege log entries contain information only pertaining to the last, most recent e-mail in a particular print-out of a chain.

Only a few reported opinions have addressed, either directly or implicitly, the issue of how e-mail chains should be disclosed on a privilege log. *See e.g., In re Universal Service*, 232 F.R.D. at 672 (declining invitation to treat entire strand of e-mails as a single communication). *See also Stafford Trading, Inc. v. Lovely*, No. 05 C 4868, 2007 WL 611252 at *8 (N.D. Ill. Feb. 22, 2007) (Keys, M.J.) (party's failure to identify and describe privileged nature of earlier e-mail within e-mail string resulted in order to produce entire document) (citing *Muro*, 2006 WL 3422181 at *2). *Cf. United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1074-75 n. 6 (N.D. Cal. 2002) (rejecting assertion that each separate e-mail stands as an independent communication because it does not accurately reflect what was communicated with each e-mail and to whom it was disclosed).

Rule 26(b)(5) requires the withholding party to provide enough information about any communications not produced to enable other parties to assess the applicability of the privilege. Listing only the most recent e-mail, as Target did, fails to disclose important information about what is being withheld from production, as illustrated by Target's Document 3. That document is

described on its privilege log as an "Email string sent August 12, 2004 at 8:22 AM" to eleven people regarding "potential VAPR Issue with Autosub." The sender is listed on the log as "Mike Murray, TFS Systems Stability." Reviewing the actual document discloses that the "string" consists, in fact, of *five different messages* of text, starting with a message sent by Mr. Murray on August 2, 2004, to some but not all of the people who received the August 12 message, and not including the corporate counsel. The August 2 message discusses a number of business issues, but also lists some topics that will be discussed "with legal." The next message included in Document 3 was sent on August 3 from Mr. Murray, apparently disseminating the results of the discussion with "legal." There are two additional messages from Mr. Murray included in the string that is Document 3, one on August 5 and one on August 11, but those appear to be simply business communications. The message that is actually identified on the log as Document 3 (the August 12 e-mail) has no privileged content at all; it is strictly a business discussion. The August 3 message is listed separately on the privilege log as Document 4 in addition to being part of Document 3, but there is no way that the reader of the privilege log could know that fact without actually viewing the documents. The August 2 message is not identified on the privilege log at all.

The basic principle of attorney-client privilege is to protect a *communication*. Thus, it follows that the privilege log must identify each *communication* which has been withheld from production because of the assertion of privilege – whether that communication is the entire strand (as might occur in a situation where, unlike Target's Document 3, a distinct and identifiable number of individuals have exchanged e-mail on a single privileged topic), or only one part of the strand. The party withholding the communication must provide the information required by Rule 26 and *Allendale*, including the date, time, and participants in the communication. It follows that *only the*

9

*privileged communication so identified may be withheld*. Every other part of the strand must be produced. The burden is on the party asserting privilege to demonstrate that the elements of privilege have been met as to each communication so withheld.[5]

Applying this analysis to, for example, Document 3, it is apparent that Target's privilege log does not satisfy Rule 26 because it does not provide the information that would enable the court and the plaintiff to evaluate the assertion of privilege as to, for example, the August 12 message. The August 12 message, which contains only business information, cannot be withheld just because Mr. Murray chose to link it to an earlier message (*i.e.*, the August 2 message) that included, among other things, a listing of topics to be discussed with "legal." The log does not disclose the withholding of the August 2 message at all.

**B.     Failure to provide information demonstrating that the communication was limited to persons within the scope of the privilege.**

   *1.     Dissemination to a large group.*

Although some of Target's e-mails were limited to two to three individuals, many e-mails were distributed among at least ten employees.[6] Several messages were even distributed to

---

[5] The court is well aware of the labor and expense potentially involved in itemizing each separate communication within an e-mail string. However, to enjoy the protection of the privilege, each communication withheld as privileged must be identified and described in a manner that fairly permits the opposing side as well as the court to assess whether the claim is valid. *See* Fed. R. Civ. P. 26(b)(5). Furthermore, the parties may agree in advance on how to address e-mail strings and corresponding entries on privilege logs. Indeed, Rule 26(f) now requires civil litigants to confer about e-discovery issues at the earliest time practicable. Such a discovery conference can potentially decrease the costs of discovery and reduce the risk of court-ordered sanctions. *See* Moore & Kaufman, 29 Nat'l L.J. 17.

[6] The following documents consist of e-mail communications that were circulated among at least ten Target employees: 3, 4, 7, 12, 24, 25, 26, 49, 50, 52 and 60.

unidentified distribution lists such as "TFS-Auth GTLs" and "TFS-GTL's-Mpls."[7] Distribution to such large numbers of persons does not suggest confidentiality, and no privilege can be maintained for communications that were shared with a group of unidentified persons.

   2.   *Lack of information about the role of the recipients.*

Aside from the problem of sheer numbers of recipients, there is also the substantive issue of whether all of the recipients were persons entitled to know privileged communications. While the previous version of Target's privilege log contained only the name of the author and recipient(s), the revised privilege log includes the job title of each individual identified as well as whether the individual is an attorney. More than thirty-five different Target employees are identified throughout the privilege log, bearing job titles such as: "Autosub Project Team"; "TFS Systems Stability"; "Senior Specialist, Card Product Development"; and "Manager, Credit Card Room." No further description is provided. Such job titles have little if any significance to those outside the Target family.[8]

Without more information, the plaintiff and the court cannot determine whether each individual who participated in the communication is sufficiently identified with the corporation such that his or her participation in the communication did not compromise its confidentiality. Whether

---

[7] The following documents' recipients include unidentified distribution lists: 47, 56, 57, 58, 61, 62, 63, 74 and 75.

[8] For example, as to Document 3, eleven people apparently received Mr. Murray's August 12 message and all of the linked previous messages. The addressees include Mike Murray and six other individuals identified by name and job title. One title is listed only as "Vice President." Five additional individuals are listed on the privilege log as "other recipients," and are also identified by name and job title, including one as "corporate counsel" and one as "Manager, Credit Card Room."

in the form of supporting affidavits or additional detail in the privilege log, Target was required to provide additional facts as to the identity and function of those individuals included in the communication to establish that the "employee ma[de] the communication at the direction of his superiors in the corporation" or that "the subject matter upon which the attorney's advice [was] sought by the corporation and dealt with in the communication [was] the performance by the employee of the duties of his employment." *Harper & Row*, 423 F.2d at 491-92. *See also Stafford Trading*, 2007 WL 611252 at *2 n. 3, 7, 8, 10 (corporate party submitted privilege log with addenda and affidavits in support of claims of privilege); *In re Air Crash Disaster at Sioux City*, 133 F.R.D. 515, 522-23 (N.D. Ill. 1990) (corporate party submitted affidavit of in-house attorney in support of claim of privilege); *Baxter Travenol*, 1987 WL 12919 at *4, 8, 9, 10, 14 (corporate party submitted affidavits to substantiate assertion of privilege). A name and ambiguous or undefined job title do little to substantiate that the confidentiality of the communication was not compromised by disclosure to individuals outside the attorney-client relationship.

   *3. Lack of limitation on further dissemination.*

None of the messages on Document 3, including those that refer to information from "legal," contain any limitation on dissemination. There is no notation that the information should be maintained confidential or that the e-mail containing that discussion should not be forwarded to others. Because the final message on Document 3 (the August 12 message) contains only business information, it would not be surprising if one of the dozen recipients of the August 12 message had forwarded it on yet again to someone else, complete with the August 2 and August 3 messages that refer to "legal." Target has not submitted any factual material demonstrating that the recipients were

instructed not forward the August 2 or August 3 message on to anyone else.

Document 3 is typical in this respect. As discussed above, many of Target's documents have a large number of recipients. Importantly, with the exception discussed below, none of the e-mails express or contain any restriction on further dissemination. Even where apparently privileged information was conveyed by counsel, it was further disseminated to others as part of a string with unprivileged business information.

For example, Document 40, which is described on the privilege log as an "Email string sent August 5, 2004[,] 11:26," by Lois Matti ("Project Lead, New Business Development"), actually consists of three messages. The earliest is an August 4 e-mail from Thomas Douty ("Senior Specialist, Card Product Development") to Ann Teynor, corporate counsel, and Jody Warden ("One-to-One Marketing Specialist"), with a copy to Lois Matti, requesting advice about the use of a particular e-mail address. Ms. Teynor responded, also on August 4, in an e-mail limited to Mr. Douty, Ms. Warden and Ms. Matti. Arguably, that exchange was privileged, although neither message is identified on the privilege log. However, the next day, Ms. Matti forwarded both August 4 messages on to three additional persons (Jody Nieborg, Brad Mares and Mike Murray) as part of her own message that asked about the proposed e-mail address from a strictly business point of view. Ms Matti's message does not even refer to Ms. Teynor's advice. None of the latter three persons participated in the original communication to Ms. Teynor, and Ms. Teynor did not include them in her original response. That undercuts the argument that the three additional addressees were persons whose positions required that they have that legal advice. Nothing in the record before the court suggests why those later-added individuals are within the scope of the privileged

communications.[9] Likewise, Ms. Matti did not suggest to any of the people receiving her e-mail that the comments of Ms. Teynor were confidential and privileged and should not be further disseminated. Those later-added individuals continued to include Ms. Teynor's communications in their subsequent e-mail exchanges about entirely non-legal matters, such as when the proposed text would be turned over to "creative." (*See* Documents 41-44, 73.)

The exception mentioned above is the group of messages that form Documents 6, 35, 36 and 37 on the privilege log. Document 6 is described on the privilege log as an "Email string sent June 4, 2004[,] 4:04 PM" from Robert Foehl (who is identified as "senior counsel") to Michael Kaushansky. Examining the document shows that it is labeled "Confidential. Attorney-client privileged communication. Do not forward without author's consent."

The strand that is Document 6 begins on May 12 at 4:26 p.m. with a message from Thomas Douty to Mr. Kaushansky, copied to David Williams and Mr. Foehl, regarding a conversation Mr. Douty had with Mr. Foehl about legal concerns, and proposing a meeting. The next message in the strand is Mr. Kaushansky's response to Mr. Douty three minutes later to set up the meeting. The next message is on May 14 at 1:49 p.m. from Mr. Foehl to Mr. Kaushansky, copied to Mr. Douty, which is marked "Confidential. Attorney-client privileged communication. Do not forward without author's consent." (That message, which contains Mr. Foehl's legal advice on the topic, is also listed on the privilege log as Document 35.) Notably, Mr. Foehl did not include Mr. Williams in his confidential communication. The next message in the Document 6 strand is a response by Mr. Kaushansky, copied to Mr. Douty, at 3:29 p.m., with additional points to consider.

---

[9] Mr. Murray is described as "TFS Systems Stability." Ms. Nieborg is described as "Autosub Project Team." Mr. Mares is simply described as "Project Specialist."

(This message is also listed as Document 36.) The final message on the print-out (the June 4 message) is the one identified on the log as Document 6.

All of those messages were limited to the original persons (Douty, Williams and Kaushansky) who were included in the first e-mail in which Mr. Kaushansky requested legal advice from Mr. Foehl. Arguably, that is some – albeit limited – evidence that those persons needed to know the answer to the legal issue for the performance of their duties (although that begs the question why Mr. Foehl did not include Mr. Williams in his message). Also, Mr. Foehl took pains to mark his communications "privileged" and not to be forwarded, and, when Mr. Kaushansky responded at 3:29 p.m., he limited his response to the two persons who were included on Mr. Foehl's messages.

Those facts would go toward sustaining the privilege at least as to Mr. Foehl's messages and Mr. Kaushansky's response, but for one additional fact: the entire strand was forwarded three days later by Mr. Douty to Mr. Williams and an additional person, Kathleen Becker, in the strand marked on the privilege log as Document 37. On May 17, at 8:25 a.m., Mr. Douty sent the entire strand, including the messages from Mr. Foehl marked "Do not forward without author's consent," along with his own message that is limited to business information. Ms. Becker's response to Mr. Douty and Mr. Williams at 2:57 p.m. refers to the recommendation of "legal," but is not seeking legal advice. She asks a business question.

Target has provided no information on which the court can conclude that Ms. Becker is within the scope of persons who can maintain the privilege. On the privilege log she is listed only as "Autosub Project Team," a meaningless description. Did Mr. Douty obtain Mr. Foehl's permission to forward the e-mails to Ms. Becker before he sent them? Did Mr. Foehl evaluate Ms. Becker's position and conclude that including her would not waive the privilege? If so, Target

has not provided the court with evidence of the factual basis on which Mr. Foehl might have so concluded. The simple fact that Ms. Becker received the message and commented on it cannot, by itself, demonstrate that she is within the scope of the privilege.

It must be recalled that the court has allowed Target *three* opportunities to provide factual bases for the support of its assertions of privilege, and it chose to rest on the bare descriptions in the privilege log.

The court has carefully considered the issues on the motion and reaches this conclusion with reluctance because some of the messages apparently do discuss legal advice. But to withhold documents on the basis of attorney-client privilege, the party must sustain its burden of establishing all of the elements necessary to qualify for the privilege. Here, Target has failed to prove an intention to create and guard confidential and privileged communications.

The problem Target has here sustaining its assertion of privilege is not merely a failure of litigation counsel to put enough evidence before the court. More fundamentally, it reflects a style of dealing with internal corporate communications that is inherently at odds with the basic principle that the ability to withhold otherwise-discoverable information is a *privilege* and an exception to the general rule of discoverability. It is difficult to imagine how communications circulated among such a large number of corporate employees without – or in spite of – an expression of confidentiality or limitation on further dissemination, and intermingled in so many instances with non-privileged business discussion, could have been created with the intention of being attorney-client privileged and could have, in fact, remained confidential communications. Target has not demonstrated that they have been.

## CONCLUSION

For the reasons set out above, the court concludes that Target has failed to satisfy its burden of providing the factual information necessary to sustain the privilege. Target has now had three chances to sustain its claim of privilege in a manner that conforms with Rule 26(b)(5), governing case law, and this court's December 22, 2005 and November 28, 2006 Orders. Accordingly, the plaintiff's motion is granted. By June 21, 2007, Target shall produce copies of the documents at issue here.

**IT IS SO ORDERED.**

_____
**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED:  June 7, 2007**