**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTINE MURO, on behalf of herself**<br>**all others similarly situated,** | ) | |
| | ) | |
| | ) | **No.  04 C 6267** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE PALLMEYER** |
| | ) | |
| **TARGET CORPORATION,** | ) | |
| **TARGET NATIONAL BANK, N.A., and** | ) | **MAGISTRATE JUDGE** |
| **TARGET RECEIVABLES CORPORATION** | ) | **GERALDINE SOAT BROWN** |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S RESPONSE TO THE "DEFENDANTS' OBJECTIONS TO MEMORANDUM**
**OPINION AND ORDER TO COMPEL PRODUCTION OF PRIVILEGED DOCUMENTS"**

**Introduction**

On November 28, 2006, Judge Brown granted the Plaintiff's Motion to Compel Production

of Documents Recently Disclosed as Being Withheld Under a Claim of Privilege ("Pl.'s Mot. to

Compel"). [Dkt 216.] However, despite finding the Defendants' privilege log woefully inadequate,[1]

Judge Brown gave the Defendants a third[2] opportunity to produce a privilege log that meets the

standards set forth by Fed. R. Civ. P. 26(b)(5), and elaborated on in *Allendale Mutual Insur. Co. v.*

*Bull Data Sys., Inc.*, 145 F.R.D. 84 (N.D. Ill. 1992).  In her order, Judge Brown went so far as to tell

the Defendants exactly what information they needed to provide for each document.[3]  Despite at

least three opportunities to supplement their privilege log, two *in camera* reviews of their allegedly

---

[1] Mem. Op. & Order, at 6 [Dkt. 237] (11/28/06)("Even before the court conducted its *in camera* inspection, one thing was clear: Target's privilege log fails to meet the requirements of Rule 26 as described in *Allendale*.  The entries are inadequate to establish the applicability of the privilege, and provide the plaintiff and the court with little assistance in making that determination. Most strikingly, the identity of any attorney is absent from the log. Likewise, in describing each document on its privilege log, Target merely copied the information contained in the subject line of the underlying e-mail document. Target's method of cutting and pasting does not satisfy its obligation to describe the nature of the document adequately.")(italics in the original, underscore added.)

[2] Mem. Op. & Order, at 16 [Dkt. 249] (6/7/07)("It must be recalled that the court has allowed Target *three* opportunities to provide factual bases for the support of its assertions of privilege, and it chose to rest on the bare descriptions in the privilege log.")

[3] Mem. Op. & Order, at 7-10 [Dkt. 237] (11/28/06).

privileged documents, and numerous warnings regarding the need to identify all of the recipients

of the withheld documents and their "capacities," the Defendants now ask this Court to find Judge

Brown's June 7, 2007 order to be clearly erroneous.

**Legal Standard**

The Plaintiff adopts the Defendants' statement of the legal standard applicable to a review

of a Magistrate Judge's order, and proceeds to the legal standards on which Judge Brown based her

decision (Dkt. 249).  The Plaintiff starts by quoting from Judge Brown's Memorandum Order and

Opinion of November 28, 2006 (Dkt. 237)(underscore added).

> [A] party that seeks to invoke the attorney-client privilege has the burden of
> establishing all of its essential elements, which have been summarized as follows:
>
>> (1) Where legal advice of any kind is sought (2) from a professional legal
>> adviser in his capacity as such, (3) the communications relating to that
>> purpose, (4) made in confidence (5) by the client, (6) are at his instance
>> permanently protected (7) from disclosure by himself or by the legal adviser,
>> (8) except the protection be waived.
>
> *[United States v.] Evans*, 113 F.3d [1457,] 1461 [(7th Cir. 1997)](citing Wigmore,
> Evidence § 2292).  'A claim of privilege cannot be a blanket claim, but must be made
> and established on a document-by-document basis.'  *Allendale [Mut. Ins. Co v. Bull
> Data Sys., Inc.]*, 145 F.R.D. [84,] 86 [(N.D. Ill. 1992)]."

Mem. Op. & Order, at 4-5 [Dkt. 237] (11/28/06).

> [W]here the client is a corporation, the privilege, once established, can be waived if
> the communications are disclosed to employees who did not need access to the
> communication.  *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories*, No. 84
> C 5103, 1987 WL 12919 at *5 (N.D. Ill. June 19, 1987).  To determine the scope of
> the privilege with a corporate client, the Seventh Circuit applies the "subject matter"
> test. Pursuant to the "subject matter" test, an employee of a corporation is
> sufficiently identified with the corporation so that his communication to the
> corporation's attorney is privileged where the "employee makes the communication
> at the direction of his superiors in the corporation and where the subject matter upon
> which the attorney's advice is sought by the corporation and dealt with in the
> communication is the performance by the employee of the duties of his
> employment." *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 491-492 (7th
> Cir. 1970), *aff'd*, 400 U.S. 348 (1971). Simply including an attorney in a
> communication will not render an otherwise discoverable document protected by the
> privilege.  [T]he courts will not permit the corporation to merely funnel papers

through the attorney in order to assert the privilege. *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 4 (N.D. Ill. 1980) (citing *Radiant Burners, Inc. v. American Gas Assn.*, 320 F.2d 314, 324 (7th Cir. 1963)).

*Id.* at 5-6. Additionally, "the attorney-client privilege excludes from its scope even confidential communications with a lawyer about business or other non-legal matters. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003)." *Id.* at 6. Finally, as Judge Brown recognized, it is a, "well-established rule that only the communications, not underlying facts, are privileged." *Id.* at 10 (quoting *Sneider*, 91 F.R.D. at 4 (citing 2 J. Weinstein and M. Berger, Weinstein's Evidence, § 503(b)(04) at 503-37 (1976))(emphasis added).)

In addition to the law set forth by Judge Brown, the Seventh Circuit has stated, "[t]he [attorney-client] privilege 'protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege.'" *In re: Walsh*, 623 F.2d 489, 494 (7th Cir 1980), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980)(quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)(emphasis added)). "The mere existence of the attorney-client relationship does not raise a presumption of confidentiality." *Sneider*, 91 F.R.D. at 3. Further, merely stamping a document "Attorney-Client Privileged" does not establish the document is privileged. *See In re: Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 523, 524 n.8 (N.D. Ill.1990)(Judge Bucklo finding the use of the stock phrase "Privileged-Prepared at the Request of Counsel" of no value in determining if the document is in fact privileged.).[4] Finally, where the privilege log fails to identify every person privy to the communication, along with the reason(s) why each person had a need to know about the communication; the party asserting the privilege has failed to prove the existence of the privilege. *See In re: Air Crash Disaster*, 133 F.R.D. at 522; *Baxter*, 1987 WL 12919, at *15 (requiring any privilege log to contain *inter alia*, "The name,

---

[4] Judge Bucklo also stated that not all legal advice is privileged, and that this reason alone on a privilege log does not support a finding of privilege. *See In re: Air Crash Disaster*, 133 F.R.D. at 523.

3

position, and responsibilities of each person receiving the document.") (emphasis added). Where the party asserting the privilege fails to provide sufficient detail, the courts have not hesitated to find that they have waived the privilege, if it ever existed. Again, this is due to the fact that the party asserting the privilege has the burden of proving that the privilege was not waived by disclosure of the communication beyond those with a "need to know." It is impossible to know if the recipients had a "need to know," if one does not know all of the recipients and their responsibilities. *Id.*

Having dealt with the privilege and the party that bears the burden for proving the privilege exists, the Plaintiff turns to the method for proving the privilege exists. The Plaintiff quotes from the same paragraph of *Allendale Mutual Insur. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84 (N.D. Ill. 1992), that Judge Brown quoted to the Defendants at the December 22, 2005, hearing in this matter.

> For *each* document, the log should identify the date, the author and *all* recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery. These categories, especially this last category, must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the requirements expounded upon in the foregoing discussion. Accordingly, descriptions such as "letter re claim," "analysis of claim," or "report in anticipation of litigation"--with which we have grown all too familiar--will be insufficient. This may be burdensome, but it will provide a more accurate evaluation of a discovery opponent's claims and takes into consideration the fact that there are no presumptions operating in the discovery opponent's favor. Any failure to comply with these directions will result in a finding that the plaintiff-discovery opponents have failed to meet their burden of establish the applicability of the privilege.

*Id.* at 88 (italics in original, underscore added for emphasis).

### Argument

This Court's review of the Defendants' Objections can be limited to the clearly erroneous standard, because the only issue of law raised by the Defendants' Objections deal with Judge Brown's use of *In re Universal Service Fund Telephone Billing Practices Litig.*, 232 F.R.D. 669 (D. Kan. 2005), as one basis for compelling the Defendants to produce their allegedly privileged

4

documents. The real issue is not whether each e-mail in a strand needs to be logged separately, but whether the Defendants listed each individual who received the allegedly privileged e-mail, their capacity within the corporation and all of the subjects discussed.[5] Further, while the Defendants argue that if given a fourth opportunity to supplement their privilege log, they could cure the deficiencies found by Judge Brown, they ignore Judge Brown's finding that:

> The problem Target has here sustaining its assertion of privilege is not merely a failure of litigation counsel to put enough evidence before the court. More fundamentally, it reflects a style of dealing with internal corporate communications that is inherently at odds with the basic principle that the ability to withhold otherwise-discoverable information is a *privilege* and an exception to the general rule of discoverability. It is difficult to imagine how communications circulated among such a large number of corporate employees without – or in spite of – an expression of confidentiality or limitation on further dissemination, and intermingled in so many instances with non-privileged business discussion, could have been created with the intention of being attorney-client privileged and could have, in fact, remained confidential communications. Target has not demonstrated that they have been.[6]

## I. The Documents Are Still Relevant Under the Applicable Standard

Once again the Defendants are citing the wrong standard with respect to discovery. Contrary to the Defendants' assertion that the Federal Rules of Evidence supply the standard for relevancy during discovery;[7] it is Federal Rule of Civil Procedure 26 that supplies the applicable standard for determining whether a requested item is "relevant" for discovery purposes.[8] As Judge Holderman wrote in *Clark v. Experian Info. Solutions*:

> As Judge Cole recently explained in *Murata Mfg. Co. Ltd. v. Bel Fuse Inc.*,

---

[5] Mem. Op. & Order, at 7 [Dkt. 249] (6/7/07)

[6] *Id.* at 16 (italics in original, underscore added).

[7] Defs.' Objection, at 7-8 (Dkt. 251).

[8] This is not the first time the Defendants have advanced an argument in bad faith in a discovery dispute. One of the Defendants' blanket objections to Plaintiff's production requests was, "DTC objects to each interrogatory/request...because it assumes facts not in evidence." (*See* Dkt. 23, at 5 [1/18/05].) In response this Court, "notes, further, that a request that 'assumes facts not in evidence' is not objectionable for that reason. The purpose of discovery is, in part, to provide the discovering party with evidence, or with information from which it can conclude that evidence does not exist." (Order of 1/20/05, at 1 [Dkt. 28].)

> the Federal Rules of Civil Procedure authorize the broadest scope of discovery and relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial. Indeed, given the minimal notice pleading system established by the Federal Rules of Civil Procedure, discovery is not even limited to issues raised by the pleadings, because discovery itself is designed to help define and clarify what the issues are. Nor is discovery limited to the merits of the cases, for a variety of fact-oriented issues may arise during litigation that are not related to the merits."

No. 03 C 7882, 2006 WL 931677 at *3 (N.D. Ill. 2006)(citing *Murata*, 422 F.Supp.2d 934 (2006)).

However, this Court does not need to rely on the broad standard set forth above because the documents being withheld are relevant to Counts I and II, as well as the class certification issue.

The Defendants raised the relevancy argument in front of Judge Brown,[9] who as the Defendants note, was not going to allow the Plaintiff to carry on discovery *ad infinitum*.[10] However, despite Judge Brown's numerous statements about getting discovery finished; Judge Brown agreed with Plaintiff counsel's argument that a party should not be able to secure summary judgment by wrongfully withholding documents, and then not be compelled to produce those documents when the party that lost on summary judgment, learns of the withheld and potentially relevant documents. Similarly, when the Plaintiff's counsel argued that this Court had been mislead by the Defendants regarding the nature and processes of the Defendants' "Autosubstitution" program, this Court stated, "I will revisit my ruling only when you show me what documents I apparently neglected or didn't see or didn't understand that show me that I was wrong...If you have evidence of misrepresentations, of course, you present those to me...Even under Rule 60, if there were misrepresentations, I view those as lies. You, of course, bring those to the Court's attention."[11] Given the foregoing statements by this Court, the Defendants' argument that the documents are not relevant is without merit. Other than the Defendants' statements that the documents are irrelevant, how can this Court evaluate the

---

[9] Defs.' Objection, at 8-9 (Dkt. 251)(quoting H'rg Tr. (4/6/06), at 20-21).

[10] *Id.* at 9-10 (Dkt. 251)(quoting H'rg Tr. (4/6/06), at 24-26).

[11] H'rg Tr. (9/13/05), at 52:20-54:3.

relevancy of the documents based on the generic descriptions in the Defendants' log?

**II. You've Got to Love the Irony of the Defendants' Waiver Argument, Especially When their Objection is More than One Year Late.**

The Defendants argue that the Plaintiff waived any objection to the sufficiency of the privilege log. First, while there is no specific period of time set forth in the rules regarding a motion to compel the production of documents being withheld under a claim of privilege, there is a ten (10) day limit on filing an objection to a magistrate judge's order. *See* Fed. R. Civ. P. 72(a). Rather than file a timely objection to Judge Brown's finding that the Plaintiff had not waived her right to object to the sufficiency of the Defendants' privilege log;[12] the Defendants waited to object until after Judge Brown had: given the Defendants at least two more opportunities to supplement their privilege log, conducted two *in camera* inspections of the withheld documents and ordered the Defendants to produce the withheld documents. Therefore, the Defendants have waived their objection to Judge Brown's finding that the Plaintiff had not waived her right to object to the sufficiency of the Defendants' privilege log. Just in case this Court disagrees, the Plaintiff turns to the facts regarding the Plaintiff's receipt of privilege log.

The Defendants' first misrepresentation of fact goes to when the Plaintiff served Document Request No. 12. That Plaintiff served that request in December 2004, and included that request in the Plaintiff's first motion to compel in January 2005. (*See* Pl.'s [First] Mot. to Compel [Ex. A], at 13.) This Court ordered, "[a]dditional responses to be made within 30 days." (Order of 1/20/05, at 1 and 2 [Dkt. 28].) The only reason the Plaintiff included Document Request No. 12 in her second motion to compel was because the Defendants were still refusing to produce any responsive

---

[12] "By Minute Order dated April 6, 2006, the court rejected the parties' respective arguments of waiver, and advised the parties of its intent to review *in camera* the documents listed on the privilege log. [Dkt 223.]" Mem. Op. & Order, at 3 n. 1 [Dkt. 237] (11/28/06). The Plaintiff notes that if this Court sustains the Plaintiff's objection regarding Judge Brown's findings that the Defendants served their privilege log in June 2005, or that such service was timely given when the documents were due and when they were produced, then the Defendants' Objections are moot.

7

documents as of the date the motion was filed (March 30, 2005). When the Plaintiff appraised this Court of the Defendants failure to produce on April 14, 2005, this Court's response to this news was to state, "It's really high time to have done these interviews."[13] Later during that same hearing, when the Plaintiff's counsel suggested that the Court might want to set a date by which all responsive documents had to be produced, this Court responded, "I think it should have happened already."[14] Given the foregoing, even assuming *arguendo* that the Defendants served their privilege log on June 20, 2005, they still served the log four months late, as the documents in question were due on February 20, 2005. (*See* Order of 1/20/05, at 1 and 2 [Dkt. 28].) Also worth noting is that despite asserting numerous objections to Plaintiff's Document Request No. 12; the Defendants never asserted attorney-client privilege. (*See* Exs. B at 10; and C at 8-9.)

Finally, the Defendants' only evidence in support of their assertion that they served their privilege log before February 28, 2006, is the incompetent hearsay supplied by Mr. Melendez's declaration of April 3, 2006.[15] While the Defendants also pointed to Mr. Melendez's e-mail of May 2, 2005, to suggest that the Plaintiff was on notice regarding claim of attorney-client privilege; the only documents the Defendants claimed to be withholding were, "a few documents that contain trade secrets."[16] Compare the foregoing evidence that the Defendants claim proves their assertion that they served the privilege log on June 20, 2005, with the Plaintiff's evidence that they did not.

First, this Court may remember that the Plaintiff objected to the adequacy of the Defendants'

---

[13] H'rg Tr. (4/14/05), at 12:21-22.

[14] *Id.* at 31:19-20.

[15] (Dkt. 220)("4. I gave the privilege log to my assistant, Dawn Revenaugh, and asked that she mail it to the Plaintiff's attorney, David Piell. She asked me whether the log needed a cover letter. I told her that she should send it without a cover letter. She accordingly mailed the log, without a cover letter, by regular mail. 5. I interviewed Ms. Revenaugh about the facts in this declaration before making the declaration. Her recollection is consistent with mine.") As with most, if not all, of the Defendants' declarations/affidavits submitted as evidence, this declaration is not based on personal knowledge.

[16] *See* H'rg Tr. (4/6/06), at 30:9 - 32:2 (alerting Judge Brown to this fact); *See also* Ex. D.

8

trade secret log, and this Court found the log so inadequate that the Court ordered the Defendants, "to produce documents identified in its privilege log for Mr. Piell's review (but not for copying)." (Order of 9/13/05, at 2 [Dkt. 136]; *See* H'rg Tr. (9/13/05), at 76:12-21.). In order for this Court to find the Defendants' arguments more probable than the Plaintiff's, this Court would have to accept that the Plaintiff received an attorney-client privilege log that was as "cryptic" as the Defendants' trade secret privilege log, but that the Plaintiff's counsel only complained about one and not the other. This Court has too much experience with the Plaintiff's counsel to believe that argument. Second, this Court would have to ignore the fact that through all four motions to compel, every time the Defendants objected based on attorney-client privilege; the Plaintiff responded that the Defendants had not produced a privilege log.[17] Given the number of times the Plaintiff complained that the Defendants had not produced a privilege log; the Defendants' claim on February 28, 2006, that they just noticed that Plaintiff claims to have never received a privilege log is incredible. (*See* Ex. H, at 2.)

### III. The Defendants' Log Does Not Comply With Judge Brown's Extremely Detailed Order

Even though Judge Brown found the Defendants' first privilege log severely deficient; Judge Brown conducted an *in camera* inspection of the Defendants' allegedly privileged documents, and told the Defendants exactly what information they needed to provide for each document in order to establish the privilege. Based on the supplemented privilege log produced by the Defendants (Dkt. 239), it appears as though Judge Brown spent more time telling the Defendants what information was required, than the Defendants spent supplementing their log.[18]

---

[17] *See* Exs. A [Dkt. 23 (filed 1/18/05)] at 5; E [Dkt. 57-2 (filed 3/30/05)], at 5; F [Dkt. 130 (filed 9/8/05)], at 6; and G [Dkt. 157 (filed 11/30/05)], at 7-8.

[18] Judge Brown's opinion states that the, "major difference between this log and its predecessor is the inclusion of the job title of the author and recipient(s) of each communication and whether that individual is an attorney. Notably, Target did not submit an affidavit explaining the significance of the job titles. With respect to documents consisting of a string or chain of e-mail communications, Target simply identified those

As already set forth above, Judge Brown informed the Defendants that for all of their documents, the Defendants needed to identify, "for *each* separate document the following information: the date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged."[19] Judge Brown then informed the Defendants of the additional requirements for each category of documents that she had identified.[20] Despite Judge Brown's efforts, the Defendants submitted a supplemented privilege log which failed to provide the basic facts that Judge Brown stated were required for each document (i.e., name for all recipients and their capacity), let alone the specific requirements set forth by Judge Brown. Not only did the Defendants fail to provide even this most basic information, but Judge Brown found that the Defendants were: claiming privilege over cover letters that did not contain or seek legal advice;[21] that the log inaccurately identified two documents as duplicates when they were not;[22] that the log, "simply identified those individuals who were party to the last message in time";[23] and that the last message in time often contained only business information.[24] In short, Judge Brown found that the Defendants' log failed to accurately apprise the court or the Plaintiff of the documents being withheld, let alone establish the privilege.

---

individuals who were party to the last message in time. In addition, Target recycled the same six to seven formulaic descriptions of the privileged nature of the document." Mem. Op. & Order, at 4 [Dkt. 249] (6/7/07)(citing Pl.'s Mot. To Compel at 8-11.).

[19] Mem. Op. & Order, at 4-5 [Dkt. 237] (11/28/06)(italics in original, underscore added).

[20] For this Court's convenience, the Plaintiff has attached the chart which even the Defendants found to be "fairly helpful" in summarizing: Judge Brown's requirements for each document on the Defendants' privilege log, the Defendants' response and the problems the Plaintiff identified from the log. (*See* Ex. I; H'rg Tr. (1/19/07), at 7:2-7.) Judge Brown never even reached the Plaintiff's argument that the Defendants had waived the privilege by producing other documents on the same subject. (*See* Pl.'s Mot. to Compel, at 10-11.)

[21] Mem. Op. & Order, at 3-4 n. 3 [Dkt. 249] (6/7/07).

[22] *Id.*

[23] *Id.* at 4 and 8.

[24] *Id.* at 9.

10

The Defendants cite Document 14 as proof of the adequacy of their log. For this document, Judge Brown ruled that in addition to providing the, "date, the author and all recipients, along with their capacities, the subject matter of the document, the purpose for its production and a specific explanation of why the document is privileged,"[25] the Defendants must also, "show that [each recipients] receipt of the communication did not compromise its confidentiality."[26] A quick look at the Defendants' supplemented privilege log entry for Document 14 shows that this document was sent to someone described only as a member of the "Autosub Project Team," and another person from "Card Product Development." (Defs.' Objection, at 12.) Not only does the log not inform us of each person's capacity, but the formulaic explanation of the privilege simply states that the document, "contains advice from Ann Teynor, a lawyer." (*Id.*) With respect to this document, the Court did not even have to get to the issue of waiver because the Defendants failed to claim, let alone prove, that the advice was primarily legal in nature, or that the advice reveals the content of a confidential communication to an attorney. One final note, the Defendants claim that none of the withheld documents are relevant, but this document deals with sending privacy policies to inactive guests who were being "autosubbed" in 2004 (i.e., the nine hundred thousand account holders who were just like the Plaintiff, as far as the Defendants were concerned). If these e-mails show that the Defendants treated inactive accounts as though they were closed (e.g., not sending required notices), then there was no account on which the Defendants could send a "substitute."

Despite Judge Brown's extremely clear instructions, the Defendants responded with little more than names for some recipients,[27] and meaningless job titles for those listed individually. For

---

[25] Mem. Op. & Order, at 5 [Dkt. 237] (11/28/06).

[26] *Id.* at 8.

[27] For many documents, the Defendants describe a withheld document as containing "a series of exchanges among senior executives" without identifying those senior executives.

11

a significant number of individuals, Defendants described them only as "Autosub Project Team."

One can only wonder what the threshold is to be called a member of the "Autosub Project Team,"

let alone how a team typical team member's responsibilities necessitate access to confidential

communications with counsel.[28]  As Judge Brown observed, there appears to have been no effort by

the Defendants' employees to limit the distribution of all but four of the documents the Defendants

are claiming are privileged.[29]  With respect to those four documents, the Defendants' objection

ignores Judge Brown's discussion of the forwarding of the entire string to Williams.  Their objection

with respect to Brecker, argues that since, "the log identif[ies Brecker] as a member of the Autosub

Project Team...There is no basis for finding a waiver. " (Defs.' Objection, at 16.)[30]  The Defendants'

argument ignores the fact that other than the author marking the communication, "Confidential.

Attorney-client privileged communication. Do not forward without author's consent," the

Defendants have made no effort to show that the communication was in fact confidential, and that

the Defendants only shared the communication with those employees with a need to know.

**IV. Judge Brown Did Not Find A Blanket Waiver, But Gave the Defendants at Least Three Opportunities to Supplement Their Privilege Log and Conducted Two *In Camera* Inspections Before Finding that the Defendants' Supplemented Privilege Log Failed to Establish the Attorney-Client Privilege**

The only possible issue of law raised by the Defendants is the Defendants' claim that it was

unreasonable for Judge Brown to require them to list separately the e-mails in an e-mail strand.

---

[28] The Defendants' objection states, "Defendants' log complies with Judge Brown's stated requirements: it clearly identifies each attorney whose advice was sought, communicated, or otherwise reflected in each privileged document..." (Defs.' Objection, at 11-12 (Dkt. 251).)  However, for twelve documents, the Defendants' log states that the communication contains the advice of "outside counsel" without identifying the outside counsel.  (*See* Defs.' Supplemented Privilege Log (Dkt. 239), Doc. #s: 7, 12, 24-26, 28, 49-50, 52, 54-55 and 60.)

[29] Mem. Op. & Order, at 12-13 [Dkt. 249] (6/7/07).

[30] The Defendants cite *Upjohn Co. v. United States*, but this case is inapplicable as the Supreme Court limited its decision to the facts before it.  449 U.S. 383, 396-7 (1981).  Further, the issue before the Supreme Court was whether information gathered from employees at the direction of their corporate superiors, which was given directly to counsel, and was not shared with anyone other than counsel, is privileged.

12

First, it is worth noting that Judge Brown ordered the production of the withheld documents because the Defendants had failed to demonstrate all eight Wigmore factors for any of the documents being withheld. Judge Brown went on to announce the rule regarding listing each e-mail in the strand separately so as to further develop the rules regarding privilege logs in this ever increasing format of communication. However, if one thinks about it, the rule announced by the court with respect to e-mail chains is not significantly different from the well-established rules for paper documents that are bundled together. Either the withholding party shows that each distinct communication is privileged (e.g., a letter is separate from its attachments, and just because the former is privileged, does not mean the attachments are also privileged by virtue of being attached), or the claim of privilege is waived.[31] It is also settled law that where a document is not primarily focused on the giving or receipt of legal advice, the document is not privileged.[32] Given these facts, it is hard to believe that anyone would think that an e-mail strand that discusses both legal and non-legal issues, could be treated as one document on a privilege log, and also be found to be privileged. As this Court can see, the issue of how to treat an e-mail could be determined from existing law.

The Defendants' arguments on this point are once again disingenuous. The Defendants cite two cases allegedly deciding the issue in the opposite direction, however both of those cases distinguishable. First, neither case really discussed the issue of whether each e-mail in a strand must have its own entry.[33] Second, in *Segal* the government was not depending solely on a privilege log to determine whether the privilege existed since the government had a "taint team" reviewing the allegedly privileged documents. Further, the court in *Segal* appears to have ordered the production

---

[31] *See Sneider,* 91 F.R.D. at 4 (citing 2 J. Weinstein and M. Berger, Weinstein's Evidence, § 503(b)(04) at 503-37 (1976)).

[32] *Id.* at 5.

[33] This conclusion is confirmed by the *In re Universal Service* court, where it stated, "none of these cases and articles provides any in-depth analysis." 232 F.R.D. at 672.

of all the e-mail strings at issue. Finally, the Defendants cite *In re Universal Service* for the proposition that the Defendants should be given another opportunity to supplement their log. The Defendants ignore the *In re Universal Service* court's statement that because of the, "unique circumstances of this particular litigation, the court is unwilling to find that AT&T has waived any privilege or protection." *Id.* None of these "unique circumstances" are present in this case.

The Defendants claim that Judge Brown's order, "demand[s] levels of sophistication and detail of which the Defendants lacked meaningful notice, and which they could not reasonably be expected to satisfy." (Defs.' Objection, at 12.) The Defendants then go on to assert that, "The Defendants could easily have logged each email in each string separately, and would certainly have done so if Judge Brown had so directed. But she never did." (*Id*. at 14.) Besides the fact that it is not the court's responsibility to spoon feed a party through its assertion of a privilege, the Defendants ignore their statements to the Court regarding their supplemented privilege log. At the January 19, 2007, hearing in this matter the following exchanges occurred:

> THE COURT: Well, I think that -- well, now when we looked at these documents, as you can tell from the opinion, we -- it wasn't entirely clear exactly what was privileged or why this whole string of documents was privileged. And that's why I entered the order that I did directing that a supplemental privilege log be given. But also more information to me about why it is that certain aspects of the documents were thought to be privileged.
> So, you know, I'm not -- I guess I'm going to leave it up to you, Mr. Melendez and Mr. Boehm, what you want to do in connection with this motion.
> But, basically, if you're handing me the privilege log and saying, okay, this is it, Judge, this is all we want to say on this topic, then I'm going to have to go back and see whether this does the trick. But I'm -- you know, I had some issues about --
> MR. MELENDEZ: You did, your Honor. You may remember that the original privilege log was done -- it was basically a word table.
> THE COURT : Right.
> MR. MELENDEZ: That is not the same word table just gussied up. You had ordered us, for example, to identify the capacities of each of the individuals. And so for every name that appeared on the document that you reviewed the first time, we have now included their title and in most cases what department they worked in at Target.
> In addition, for each document there is a -- you'll see that the left-hand column matches the *Allendale* categories. And for every document we added a

14

category that I think *Allendale* calls explanation or something like that. It is basically a justification of the privilege --

    THE COURT: Uh-huh.

    MR. MELENDEZ: -- that that wasn't on the earlier log at all. So we have identified who the lawyers involved were, what the communication was, and what the topic of the communication was. And none of that information was on the earlier log.

    THE COURT: Okay. <u>Now does this take care of all of the entire strings of emails?</u>

    MR. MELENDEZ: <u>We believe it does, your Honor.</u>

(H'rg Tr. (1/19/07), at 4:13-6:2 (emphasis added)).

    THE COURT: ... So let's see. Now what do we want to do about anything else on this? <u>I mean, it is the defendant's view that they are just going to rest on the revised privilege log or do you want something more</u>?

    MR. MELENDEZ: Well, it is my understanding that that's what you told us, your Honor, that you get one more bite at the apple, and we have taken it, so I don't want to push the Court's patience. I mean, if we're to -- frankly, I think most of these issues, while there is technically a privilege present, there -- you know, it is not going make or break the case.

    THE COURT: Well, that's what I am thinking. We are spending a lot of time --

    MR. MELENDEZ: <u>I mean, we're spending thousands upon thousands of dollars quibbling other things that just don't matter that much. So I think, your Honor, we are willing --</u>

    THE COURT: Okay.

    MR. MELENDEZ: -- <u>to rest on the privilege log</u>.

(*Id.* at 14:17-15:11 (emphasis added)).

## CONCLUSION

Judge Brown gave the Defendants very explicit directions about what information they had to produce in order to maintain their claim for privilege. The Defendants' response was a privilege log that, while it contained, "the requisite categories of information, the descriptions were void of factual detail."[34] Given the Defendants' representations to Judge Brown set forth in section IV, this Court should overrule the Defendants' Objections and compel the immediate production of all of the documents Judge Brown ordered produced on June 7, 2007.

---

[34] Mem. Op. & Order, at 2 [Dkt. 249] (6/7/07).

Respectfully Submitted,

s/David J. Piell
David J. Piell
1431 McHenry Road
Suite 213
Buffalo Grove, IL 60089
david@consumerprotectionlaw.org
Phone: (847) 955-1276
Fax: (847) 955-1953
Bar ID No. 6278241

## PROOF OF SERVICE BY ELECTRONIC MEANS

The undersigned, being first duly sworn under oath, deposes and states that this notice was served on counsel for all parties in this matter by electronic means concurrent with the filing of the aforementioned with the Court's ECF/CM system.

s/David J. Piell
David J. Piell
1431 McHenry Road
Suite 213
Buffalo Grove, IL 60089
david@consumerprotectionlaw.org
Phone: (847) 955-1276
Fax: (847) 955-1953
Bar ID No. 6278241
Attorney for Plaintiff

16