**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CHRISTINE MURO, on behalf of herself and all others similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **No. 04 C 6267** |
| ) | |
| **TARGET CORPORATION, TARGET** ) | **Judge Rebecca R. Pallmeyer** |
| **NATIONAL BANK, N.A., and** ) | |
| **TARGET RECEIVABLES CORPORATION,** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Christine Muro received an unsolicited credit card in the mail. She found this so upsetting that, rather than simply cutting the card in two and discarding it, she filed this lawsuit against Defendants Target Corporation, Target National Bank, and Target Receivables Corporation (collectively, "Target"). Muro alleged that Target had violated two provisions of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* (2000). The first provision prohibits the sending of unsolicited credit card offers ("Count I"), *id.* at § 1642, and the second requires that credit card offers be accompanied by certain enumerated disclosures ("Count II"), *id.* at § 1637. She also alleged several tort and contract claims under state law. Muro seeks to represent a class of similarly-situated plaintiffs.

Target defended against Muro's class claim for Count I on the grounds that it was legally entitled to send unsolicited Target Visa Cards ("TVCs") to its Target Gift Card customers, as a permissible substitution for their current cards. This court granted summary judgment in favor of Target on the substitution defense on Count I, denied class certification on that Count, and granted summary judgment in favor of Defendants on all of Muro's state law claims. *Muro v. Target Corp.*, No. 04 C 6267, 2005 WL 1705828, at *13 (N.D. Ill. July 15, 2005). At the same time, the court ruled that Muro's personal claim under Count I survived summary judgment, because she alleged that

Target had closed her account before sending her an unsolicited TVC, thus making the substitution defense inapplicable. *Id.* The court reserved ruling on whether class certification was appropriate as to Count II, asking the parties to provide further briefing on the question, and referred the case to Magistrate Judge Geraldine Soat Brown for discovery supervision.

Currently before the court are five matters. First, both Target and Muro have moved for summary judgment as to Count II, the TILA disclosure claim. Second, the court now considers whether a class should be certified as to Count II. Third, Muro has moved the court to reconsider its previous grant of summary judgment on Target's substitution defense. Fourth, Muro has filed objections to certain of the Magistrate Judge's discovery rulings. Finally, Target has filed an objection to Judge Brown's direction that Target produce seventy-nine documents over which it asserts privilege. For the reasons explained below, the court grants summary judgment in favor of Target on Count II, denies class certification on Count II, denies the motion to reconsider the earlier grant of summary judgment, overrules Muro's objections to Judge Brown's orders, and sustains in part Target's objection to her rulings on the privileged documents.

## FACTUAL BACKGROUND

The court assumes that readers of this opinion are acquainted with the facts recited in its prior memorandum opinion and order, and in the prior orders of the Magistrate Judge. *See Muro v. Target Corp.*, 243 F.R.D. 301, 303-05 (N.D. Ill. 2007) (Brown, Mag. J.); *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181, at *1-2 (N.D. Ill. Nov. 28, 2006) (Brown, Mag. J.); *Muro*, 2005 WL 1705828, at *1-3 (Pallmeyer, J.).

## I.    The Target Gift Card and the Target Visa Card

In 1998, Muro applied for a Target Guest Card, which is an in-store credit card that can only be used at Target Stores. (Muro Dep. 80:10-16.) She paid the balance in full in December of 1999 and asked Target National Bank (then known as Retailer's National Bank) to close her Target Guest Card account. (*Id.* at 16:3-20, 17:11-14, 29:9-22.) According to Muro, Target National Bank

representatives told her that they would close the account, and although she never received a letter confirming that the account was closed, she never again received a bill for the Target Guest Card. (*Id.* at 19:1-18.)

More than four years later, on August 31, 2004, Muro received an unsolicited TVC in the mail. (*Id.* at 33:1-6, 34:2-21.) Target furnished the written disclosures required by the TILA in connection with this card, but did not organize them in a table. (Pl.'s LR 56.1 Resp. [142-2] ¶ 13; Defs.' LR 56.1 Resp. [151] ¶ 23.) Muro understood that she would need to activate the TVC before she could use it. (Muro Dep. 43:18-23.) She did not, in fact, activate the TVC, nor did she suffer any actual damages as a result of receiving it. (*Id.*; Pl.'s LR 56.1 Resp. ¶ 16.) Furthermore, Muro admits that she never paid a finance charge in connection with the TVC (Pl.'s Summ. J. Sur-Reply [178], at 6), and there is no evidence, nor has she suggested, that she ever used it. Nevertheless, Muro found receiving the unsolicited card to be "really upsetting," so she contacted an attorney and initiated this lawsuit. (Muro Dep. 36:9-22.)

## II.    The Privilege Log Dispute

After deciding the first set of motions for summary judgment, the court referred this case to the Magistrate Judge for pretrial supervision. (Minute Entry [149].) Subsequently, an extensive discovery dispute arose, which generated two written opinions by the Magistrate Judge and two sets of objections from the parties. The court will briefly recount the history of this dispute, which concerns the validity of Target's claim that a group of documents are subject to the attorney-client privilege.

After Muro filed her Fourth Motion to Compel Production of Documents [157-1], the Magistrate Judge ordered Target to produce a privilege log that satisfied the requirements of Federal Rule of Civil Procedure 26(b)(5) as described in *Allendale Mutual Insur. Co. v. Bull Data Systems Inc.*, 145 F.R.D. 84 (N.D. Ill. 1992). (Minute Entry [187], Dec. 22, 2005.) Target then produced a privilege log listing eighty-nine documents as privileged, all but four of which were e-

3

mails. *Muro*, 243 F.R.D. at 304 n.3.

On March 13, 2006, Muro made another motion to compel the production of the documents listed on the log [216], arguing in part that Target had waived its privilege objections by failing to produce a privilege log until February 28, 2006. After finding that, whether or not Muro had received it, Target had timely produced the log in June of 2005,[1] the Magistrate Judge took the motion to compel under advisement, pending an *in camera* review of the allegedly privileged documents. (Minute Entry [223, hereinafter "2d Brown Order"], at 3, April 6, 2006.) Muro filed a timely objection to this ruling, urging that the Magistrate Judge had erred by failing to order production at that time (Pl.'s Objs. [231-2], at 7-9), as well as challenging numerous other rulings contained in the Magistrate Judge's minute orders of April 5-6, 2006.[2] (*Id.* at 2-6, 10-15; Minute Entry [222, hereinafter "1st Brown Order"], April 5, 2006; 2d Brown Order 1-3.)

Following her *in camera* review, Judge Brown concluded that although many of the documents listed might indeed be privileged, the log was inadequate. *Muro*, 2006 WL 3422181, at *3. Specifically, Target's log did not include information about the role of each author or recipient of the communications listed and did not indicate which communicants were attorneys. *Id.* Accordingly, Judge Brown ordered Target to submit a revised log so that she could rule on its

---

[1]    The court is puzzled that this issue required the Magistrate Judge's involvement; surely it would have been more efficient for Muro to ask for a new copy of the log than to bring a motion to compel. Muro's Local Rule 37.2 statement, although stating generally that she had tried in good faith to "resolve these disputes," did not mention any requests for Target to send a privilege log, instead describing only Muro's attempts to obtain documents containing underwriting information. (Pl.'s Fourth Mot. to Compel [157-1] ¶ 14.)

[2]    In addition to the issues connected with Target's privilege log, Muro makes four other objections to the Magistrate Judge's two minute entries. She argues that the Magistrate Judge erred by (1) ruling that Target did not have to comply with a request for documents relating to its "underwriting criteria" because those criteria are not relevant, (2) ruling that Target's Litigation Hold Notices were subject to attorney-client privilege and work-product protection, (3) ruling that Target's Rule 30(b)(6) witnesses had been adequate and that no further Rule 30(b)(6) depositions would be permitted, and (4) ruling that Target need not provide further answers to Muro Interrogatory No. Ten because Muro was not seeking any additional relevant information through that interrogatory. (Pl.'s Objs. 2-6, 10-15.) The court discusses, and overrules, all these objections *infra.*

privilege claims, warning Target that failure to comply with the order, including failure to adequately explain the role of each communicant, would result in an order compelling production. *Id.* at *6.

Target filed a revised privilege log [239], now claiming that only seventy-nine documents were privileged, *see Muro*, 243 F.R.D. at 304, and Muro renewed her motion to compel [240]. Target declined to respond to this motion, choosing instead to rest on the revised log. *Id.* at 304-05.

The Magistrate Judge then reviewed both the revised log and the itemized documents *in camera*, concluded that the log remained inadequate, and ordered production of all documents listed in the log. *Id.* at 310. In her opinion, Judge Brown listed four reasons for this decision. First, the log failed to separately itemize e-mails forwarded as part of an e-mail "string." *Id.* at 306-07. Second, many of the communications were sent to more than ten Target employees. *Id.* at 307-08. Third, the log did not include information about many recipients, because the log failed to specify who precisely received e-mails sent to mailing lists, and because some of the job titles listed on the log were insufficiently explanatory. *Id.* at 308. Finally, few of the documents listed included explicit limitations against further dissemination. *Id.* at 308-09.

Judge Brown ordered Target to produce all the documents listed on the log, without stating specifically whether this order was a sanction for defects in the revised privilege log, or it was based on a finding that the privilege did not attach to any of the documents. *See id.* at 310. The Magistrate Judge did not find that Target had acted in bad faith in connection with the creation of the revised privilege log, and did not individually discuss each document listed in the log. *See id.* at 306-10. Target filed a timely objection to the Magistrate Judge's order. (Defs.' Objs. [251], at 1, June 21, 2007.)

**DISCUSSION**

I.      **Summary Judgment on Count II**

First, this court considers the parties' cross motions for summary judgment on Muro's claim that Target sent her a credit card without making the required TILA disclosures.  Summary judgment is appropriate when the evidence, viewed in the light most favorable for the non-moving party, presents no genuine issue of material fact, so that the movant is entitled to judgment as a matter of law.  *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005).

Muro claims that Target has violated both §§ 1637(a) and (c).  (Am. Class Action Compl. [19] ¶¶ 30-35.)  Section 1637(a) requires that a creditor make certain enumerated disclosures "before opening" a credit card account.  By contrast, § 1637(c) requires a different set of enumerated disclosures in connection with any "applications or solicitations" for credit card accounts.  Finally, § 1640 places limits on who may bring a private action to enforce §§ 1637(a) and (c).[3]

A.      **Muro's Claim Under § 1637(a)**

Target is entitled to summary judgment on the § 1637(a) claim, because Muro has admitted that "where [there was a] duty of disclosure under the Truth in Lending Act" in connection with the credit card Muro received, "Target furnished the required disclosures."  (Pl.'s LR 56.1 Resp. ¶ 13.)  In her Local Rule 56.1 Response, Muro goes on to contend that those disclosures were not "in the tabular format required by 12 C.F.R. § 226.5a."  (Pl.'s LR 56.1 Resp. ¶ 13.)  Although this contention is relevant to her § 1637(c) claim, it has no bearing here; tabular format is required in disclosures accompanying applications and solicitations for credit card accounts, *see* 15 U.S.C. § 1637(c), 12 C.F.R. § 226.5(a)(3) (2007), but not for initial disclosures relating to the opening of a

---

[3]      Section 1640 contains a wide variety of limits on the type and amount of damages available for various TILA violations.  However, the only limit that is specifically relevant to this opinion is the rule that § 1637(c) claims cannot be maintained by persons who have not paid a fee or used the credit card in question.  15 U.S.C. § 1640(a).

credit card account, *see* 15 U.S.C. § 1637(a), 12 C.F.R. § 226.6. Thus, Muro has admitted that all necessary § 1637(a) disclosures accompanied the credit card sent to her by Target.

Muro contends, however, that these disclosures came too late to satisfy the § 1637(a) requirement that all disclosures occur "before the opening" of a credit card account. (Pl.'s Summ. J. Resp. [142-3], at 13; Pl.'s Summ. J. Sur-Reply [178], at 5-6.) The basis of this contention appears to be Muro's theory that an "account" was opened before Target sent the credit card. Target, by contrast, claims that an account would only have been opened if Muro had activated that card, which never occurred. (Defs.' Summ. J. Mem. [114], at 4.) Neither party cites any authority for these assertions, and although both parties have made conclusory statements about this issue,[4] neither has offered a legal argument on the topic, so the court proceeds without the benefit of useful input from the parties.

Neither § 1637, nor the definition section of the TILA, 15 U.S.C. § 1602, nor Regulation Z, 12 C.F.R. §§ 226.2, 226.6, provide any definitions clarifying when an "account" has been "opened" for the purposes of the TILA. Nor have either the Supreme Court or the Seventh Circuit provided guidance on this question. Regulation Z does make it clear that initial disclosures must be furnished before a consumer makes any transaction under the credit plan, 12 C.F.R. § 226.5(b)(1), but this does not foreclose the possibility that an account is opened (and disclosure obligations attach) before that time. *See Lirtzman v. Spiegel, Inc.*, 493 F. Supp. 1029, 1033 (N.D. Ill. 1980) (holding that initial disclosures must occur at "some time before the first transaction takes place," but leaving open the question of how much earlier that should be) (internal citations and punctuation omitted).

---

[4] Muro asserts that "the Defendant's TVC account tracking system shows Ms. Muro's TVC account was opened on 8/27/04," without any legal argument or explanation of how Target's internal business practices are capable of controlling the meaning of federal statutes. (Pl.'s Summ. J. Sur-Reply 5.) Target asserts that "no account was ever opened" because "Ms. Muro did not activate the Target Visa Card," but likewise cites no authority. (Defs.' Summ. J. Mem. 4.)

Although there is no binding authority on this issue, those commentators who have addressed the matter have concluded that an account is not "opened" until the consumer has accepted a credit offer and become bound by its terms. Thus, both the Federal Reserve Board's Official Staff Commentary and the treatise *Truth in Lending* state that disclosures are timely if they are made "before the customer becomes obligated on the plan." *Official Staff Commentary on Regulation Z* §226.5(b)(1), *in* Elizabeth Renuart & Kathleen Keest, *Truth in Lending* app. C, at 812 (5th ed. 2003); Renuart & Keest, *supra*, at § 5.5.2.

The few courts to consider the issue have reached similar conclusions. Thus, the Kansas Supreme Court has held that disclosures are timely if they are made while a consumer still may choose to opt out and accept a different offer of credit. *Super Chief Credit Union v. Gilchrist*, 653 P.2d 117, 125 (Kan. 1982). Similarly, the Third Circuit has observed that the initial disclosure requirement is usually satisfied, in a credit card agreement, "by providing the disclosures along with the card." *Rossman v. Fleet Bank (R.I.) Nat'l Ass'n*, 280 F.3d 384, 390 (3d Cir. 2002) (citing S. Rep. No. 100-259, at 3 (1988), reprinted in 1988 U.S.C.C.A.N. 3936, 3938). Finally, the Southern District of New York has held that disclosures provided at the time that a consumer signs a credit agreement are timely. *Stein v. JP Morgan Chase Bank*, 279 F. Supp. 2d 286, 292-93 (S.D.N.Y. 2003). Thus, the existing authorities strongly support the reading that an account is not "opened" until the customer has acted to bind herself to its terms.

The strongest contrary argument is that this court is bound to construe the TILA liberally, in order to effectuate its goal of meaningful disclosure. *See Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1282 (7th Cir. 1980), *rev'd on other grounds*, 452 U.S. 205 (1981). The court's duty, however, is not to give broad construction mindlessly, but rather to apply constructions that further the goal of the statute, which is to promote "the informed use of credit" by ensuring that consumers are aware of the costs of credit and able to meaningfully compare different credit offers. *See* 15 U.S.C. § 1601(a). So long as a consumer is given proper disclosures before binding herself, this

statutory purpose is amply achieved. Thus, the court is satisfied that an account is not "open" until, at the earliest, a consumer has made a commitment to be bound by its terms. *Gilchrist*, 653 P.2d at 125.

During her deposition, Muro admitted that she did not activate the TVC. (Muro Dep. 43:18-20.) Although she subsequently gave a general denial of this statement when responding to Target's Local Rule 56.1 Statement (Pl.'s LR 56.1 Resp. ¶ 14), she did not cite to any evidence supporting this denial, and did not explain the discrepancy with her prior testimony. Thus, Muro has effectively admitted that she never activated the card. *Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006) (party cannot survive summary judgment by denying prior deposition testimony without explaining the discrepancy); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (noting that "failure to respond by the nonmovant as mandated by the local rules results in an admission" and that this includes a failure to cite to supporting evidence)*; see* Local Rule 56.1(b)(3)(B) (requiring citations to evidence for any denials of the movant's Local Rule 56.1 statement). Because Muro never activated the card, and because she does not contend that she took any other action that could be taken as an acceptance of Target's offer, the account was not open when she received the card, and therefore the disclosures, which she admits were proper in form and content, were also timely. Accordingly, Muro's disclosure claim under § 1637(a) must fail by her own admissions.

### B.    Muro's Claim under § 1637(c)

The same admission is also dispositive with respect to Muro's claim under § 1637(c), which requires certain disclosures in connection with applications or solicitations for credit card accounts. Section 1640(a), which creates the private right of action to enforce the TILA, precludes any private plaintiff from bringing an action based on § 1637(c) unless that plaintiff has paid a fee or used the credit card. As discussed above, Muro has admitted that she never accepted the card. Furthermore, in her Sur-Reply, Muro admits that she never paid any finance charges (Pl.'s Summ. J. Sur-Reply 6), and she has never asserted that she either used the card or paid any other fees

9

in connection with it.[5]  Thus, Muro's claim under § 1637(c) must also fail, because she has failed to produce any evidence to show that she has standing under § 1640 to bring such a claim.[6]  Thus, the court grants summary judgment to Target on Muro's claims under § 1637 and denies Muro's motion for summary judgment on the same claims.

## II.    Class Certification on Count II

Muro has also moved to certify and represent a class of plaintiffs who have been harmed by Target's alleged failure to observe the disclosure requirements of 15 U.S.C. §§ 1637(a) & (c).  (Pl.'s Class Mem. [17-2], at 2-3.)  Based on this court's grant of summary judgment against Muro on her § 1637 claims, this motion must necessarily fail, because Muro is not a member of any class that could be properly certified in this action.

In its previous Memorandum Opinion and Order, the court directed the parties to provide further briefing specifically addressing the appropriateness of class treatment for the § 1637 claims. *Muro*, 2005 WL 1705828, at *13.  Despite this, Muro, in her most recent submissions on this topic, has continued to argue for class definitions that relate solely to her § 1642 claim (Pl.'s 2d Class Reply [143], at 2, 10-11), which this court previously held was not a proper candidate for class treatment.  *Muro*, 2005 WL 1705828, at *13.  Each of these proposed classes is defined around the receipt of unsolicited credit card offers, without any tailoring towards the disclosure requirements of § 1637, or the standing requirements of § 1640.[7]

---

[5]    Muro's only response to this point is to assert that other members of the class she seeks to represent might have paid such charges.  (Pl.'s Summ. J. Sur-Reply 6.)  Even if true, this assertion is irrelevant to whether Muro herself has a valid claim under § 1637(c).  The court will address the class certification question *infra*.

[6]    The court therefore declines to address Target's arguably frivolous argument that its disclosures complied with the § 1637(c) requirement that certain information be in "tabular format," despite the fact that those disclosures included no tables.  (Defs.' Summ. J. Reply 5-6.)

[7]    For instance, the smallest proposed class offered by Muro consists of the following individuals:

(continued...)

Before this court would consider certifying a class in this case, the class definition would need to be tailored so as to maximize the probability that the class members each had viable claims, to the extent consistent with judicial economy. In this case, such a class would necessarily be limited to those individuals who received disclosures that failed to conform with the requirements of § 1637, and who also met the standing prerequisites of § 1640.

In order to certify and represent a class, a representative plaintiff must first be a member of that class. *Foster v. Ctr. Twp. of LaPorte County*, 798 F.2d 237, 244 (7th Cir. 1986). Based on the undisputed facts set forth in the previous section, Muro could never be a member of a proper class under § 1637. She cannot be a member of a class claiming violations of § 1637(a), because she admits that she received all proper disclosures, and because she never opened an account. Likewise, she can never be a member of a class claiming violations of § 1637(c), because she admits that she never paid any fees or used the TVC, and thus, under § 1640(a), she has no standing to bring a § 1637(c) claim. Thus, because Muro cannot be part of any class claiming § 1637 violations, she cannot represent any class under Count II.[8]

_____

[7](...continued)
All persons who were mailed a Target Visa Card without first requesting or applying for said card, and who did not at the time hold any open Target-branded credit card, including Target Guest Card holders who had cancelled their Guest Card prior to issuance of the Target Visa Card.

(Pl.'s 2d Class Reply 11 (italics omitted).) This definition bears little relationship to the elements of a § 1637 claim; it has no reference to receipt of inadequate disclosures, and no recital of the appropriate standing elements.

[8]  Even if an appropriate class definition were proposed that could include Muro, certification would still be exceedingly unlikely. Muro has made no effort to address the issues associated with certifying a class under § 1637, as opposed to § 1642, and has never shown the court that the Federal Rule of Civil Procedure 23(a) or (b)(3) elements can be satisfied with respect to such a class. There are no adequate allegations that a sufficiently numerous group of people have received inadequate disclosures, which is fatal under Rule 23(a)(1). Likewise, Muro's admissions make it unlikely either that her claims are typical of an appropriate class of plaintiffs, or that she can act as an adequate class representative. *See* FED. R. CIV. P. 23(a)(3), (4). Finally, the total failure of Muro's counsel, David J. Piell, to brief this issue, coupled with his rambling nature

(continued...)

### III.    Motion for Reconsideration

After this court entered summary judgment in favor of Target on its substitution affirmative defense, *Muro*, 2005 WL 1705828, at *13, Muro filed a motion seeking, *inter alia*, that the court reconsider that ruling.  (Pl.'s First Mot. to Reconsid. [108] ¶¶ 6-7, July 27, 2005.)  The court denied that motion, because it merely reiterated arguments that the court had previously rejected.  *(*Minute Entry [112], Aug. 2, 2005.)  Muro then filed a second motion to reconsider the same ruling (Pl.'s 2d Mot. to Reconsid. [154-1], Nov. 30, 2005), more than four months after the ruling at issue.[9]

Muro argues that this court should consider his successive motion under Federal Rule of Civil Procedure 59(e), despite the fact that Rule 59(e) motions to alter or amend a judgment must be made "no later than ten days after entry of the judgment."  The court chooses instead to consider the motion as one for relief from judgment under Federal Rule of Civil Procedure 60(b).  *See Easley v. Kirmsee*, 382 F.3d 693, 696 n.2 (7th Cir. 2004) (motions to reconsider filed more than ten days after the ruling are properly treated as Rule 60(b) motions).

Rule 60(b) can only be used to obtain relief from a judgment when there is a defect in that judgment that cannot be remedied through the normal appellate process.  *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800-01 (7th Cir. 2000).  Such defects might include a fraud on the court, or newly discovered evidence that a party could not have discovered and presented to the court before the judgment.  Fed. R. Civ. P. 60(b); *Bell*, 214 F.3d at 801.  Although Muro spends a great deal of time attempting to reargue the law applicable to the substitution defense, such argument

---

[8](...continued)
of his memoranda, devoid of appropriate legal citations and arguments, generates doubts as to his adequacy as class counsel.

[9]    Muro's counsel, David J. Piell, also at that time filed a separate action in the Northern District of Illinois, which was assigned to Judge Gottschall.  *See* Complaint, *Acosta v. Target Corp.*, No. 05 C 7068 (N.D. Ill. Dec. 16, 2005).  Neither Mr. Piell nor counsel for Target alerted the court to this parallel action, which seeks to certify a class to bring a § 1642 claim that appears nearly identical to the one that is the subject of this motion to reconsider.  *Id.* ¶¶ 1, 41-51.

is inappropriate here; arguments that a district court inappropriately applied the law are precisely the sort of issues that are more properly raised on appeal than in a Rule 60(b) motion. *Bell*, 214 F.3d at 800-01.

A more plausible argument raised by Muro for reconsideration is that new evidence she has unearthed during the discovery process demonstrates an error in the court's prior decision that Target was entitled to summary judgment on its substitution affirmative defense.[10] (Pl.'s Reconsid. Mem. [154-2], at 1-2; Pl.'s Reconsid. Reply [189], at 1.) Rule 60(b) provides for relief from a judgment when an aggrieved party presents "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." FED. R. CIV. P. 60(b)(2). Since no trial has yet occurred, this court considers the appropriate due diligence inquiry to be whether Muro could have presented this evidence to the court either before the July 27, 2005 Memorandum Opinion and Order, or at the latest as part of Muro's earlier motion for reconsideration of the same ruling under Rule 59(e).

To explain her failure to produce the new evidence before the prior decisions, Muro blames Target's "extremely tardy production of documents" and explains that she was unable to depose key witnesses until several months after the court's decision. (Pl.'s Reconsid. Mem. 2-3.) Such excuses cannot establish that Muro has used due diligence. Significantly, Muro herself moved for summary judgment on this issue on December 21, 2004, less than three months after filing her complaint and just over a month after receiving Target's answer. (Pl.'s 1st Mot. for Summ. J. [15], at 1, Dec. 21, 2004.) Thus, Muro made this motion before she had received any discovery responses from Target, yet nevertheless asserted that there were no disputes of fact. (Pl.'s 1st Summ. J. Reply [52], at 1.) It was only after Muro filed her motion that Target made its own cross-

---

[10] Muro does not allege that this evidence was withheld due to bad faith or fraud; rather, she argues that she failed to discover certain evidence because of tardy production by Target and her failure to take certain depositions before making the motion. (Pl.'s Reconsid. Mem. 2-3.)

motion for summary judgment on the same defense.  (Defs.' 1st Summ. J. Resp. & Cross-Mot. [42], at 1, Feb. 16, 2005.)  Nor did Muro request that the court stay its decision so that she could gather and present additional supporting evidence.  FED. R. CIV. P. 56(f).  Having made this choice, Muro cannot now ask the court to allow her to relitigate the same issues which the court has already decided on the basis of a lack of evidence.[11]  Accordingly, Muro's Rule 60(b) motion for relief from judgment, styled as a motion to reconsider, is denied.

## IV.  Muro's Objections to Magistrate Judge Brown's Discovery Rulings

Muro objects to seven of Judge Brown's rulings of April 5-6, 2006.  (Pl.'s Objs. 2-3, 8-12; 1st Brown Order; 2d Brown Order 1-3.)  This court will modify or set aside a Magistrate Judge's nondispositive orders only when they are clearly erroneous or contrary to law.  FED. R. CIV. P. 72(a).  Under this standard, the district court will overturn such rulings only if it has a "definite and firm conviction that a mistake has been made."  *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).  The court will consider each of Muro's objections in turn.[12]

---

[11]  Even if the court were to consider Muro's newly-proffered evidence, it is doubtful that it would reach a different conclusion.  Most of that evidence is equivocal at best, proving merely that the switch from a Target Guest Card to a TVC sometimes involved minor technical or business delays, and was therefore less than instantaneous.  Thus, for instance, Muro offers evidence that when Target activated a new TVC, it might sometimes take as long as eighteen hours before the computer system disabled the Target Guest Card.  (Pl.'s Reconsid. Mem. at 3; Murray Dep. 15:8-20.)  Similarly, Muro offers evidence that Target sometimes reactivated the Target Guest Card for a single purchase, if customers who had activated a TVC mistakenly tried to use their inactive Guest Card, but that the Guest Card was then immediately and permanently disabled.  (Pl.'s Reconsid. Mem. at 3; Murray Dep. 36:15-19.)  Much of Muro's remaining new evidence consists of deposition testimony that some Target employees have occasionally referred to the Target Guest Card and the TVC as different "accounts," or that Target's computer systems labeled the accounts separately.  (*See* Pl.'s Reconsid. Mem. 4.)  Such "evidence" is of little consequence, as the use of language by individual Target employees cannot control the legal meaning of an "account" for TILA purposes.

[12]  More than a year after being served with Muro's objections (*see* Certificate of Service, Pl.'s Objs. 16), Target has made its first response to these objections in a letter to this court.  (Ltr. from Brian Melendez to the court [262], at 1, Oct. 15, 2007.)  In this letter, Target asks this court to deny Muro's objections on the ground that Muro failed to comply with Local Rule 5.3(b), which requires that all objections be accompanied by a notice of presentment.  (*Id.* at 2.)  Although

(continued...)

## A.     The Clarification Order Regarding "Underwriting Criteria"

Muro first objects to the Magistrate Judge's April 5, 2006 minute order, in which the judge clarified her prior ruling regarding underwriting criteria.  (1st Brown Order.)  The judge explained that she had declined to require Target to produce documents containing underwriting criteria, because underwriting criteria were no longer relevant in this action.  (*Id.*)  This objection is untimely; Muro styles it as an objection to the April 5 minute entry, but that entry merely restated and clarified an order from February 2006.  Objections must be made within ten days of the challenged order, so Muro has waived this objection, and it is accordingly overruled.  FED. R. CIV. P. 72(a).

In any event, if the objection had not been waived, the court would still have overruled it. Muro appears to believe that the underwriting documents are relevant to Target's substitution defense, and represented to the Magistrate Judge that that was the only relevance the information had.  (Pl.'s Objs. 3-5; 2d Brown Order 2.)  The court has already granted summary judgment on that issue, however, and, as explained above, declines to reconsider that ruling.[13]  Muro urges further that the Magistrate Judge has failed to adequately define "underwriting criteria," and suggests that this failure has permitted Target to withhold otherwise-discoverable documents that do not contain underwriting criteria.  (*Id.* at 5-7.)  This objection is irrelevant; the Magistrate Judge did not order that documents containing underwriting criteria were privileged or otherwise shielded from

---

[12](...continued)
the court has discretion to do as Target asks, *see* Local Rule 78.2, it declines to do so, for two reasons.  First, by waiting more than a year after being served to make this argument, Target has arguably forfeited it.  Second, the court did not receive notice of this new argument until it had nearly completed its analysis of Muro's objections on their merits.  As the court has concluded that none of Muro's objections are valid, the presentment argument is moot.

[13]     In her objections, Muro now suggests that this information might also be relevant to her § 1637 claim, or to the amount of statutory damages to which she is entitled.  Even if these arguments were not forfeited by her failure to raise them before Judge Brown, they are to no avail. First, Muro has no § 1637 claim, as discussed above. Second, Muro does not appear to be entitled to statutory damages, because she did not pay a finance charge, and because she is not involved in a class action.  *See* 15 U.S.C. § 1640(a)(2)(A)(I) & (B).

discovery; she merely ruled that Muro was not entitled to discovery of underwriting documents, not that Muro could not obtain properly discoverable documents that happened to contain underwriting criteria. (1st Brown Order.) To the extent that the court understands the remainder of Muro's argument on the topic of vagueness, it appears to consist primarily of reargument of the substitution affirmative defense issue. This objection is overruled.

## B.    Finding that a Privilege Log Was Served

Muro's second objection relates to the Magistrate Judge's finding that Target served a privilege log in June of 2005. (Pl.'s Objs. 7; 2d Brown Order 3.) Muro claims never to have received the log at that time, and argues that this finding is clearly erroneous because it was premised upon hearsay evidence: the Magistrate Judge relied, in part, on a declaration by defense counsel, Brian Melendez, (1) that he told his secretary to mail the privilege log, and (2) that she did so, on Monday, June 20, 2005.[14] (Pl.'s Objs. 7; Melendez Decl. [220], at ¶ 4-5, Apr. 3, 2006.) It was appropriate for the Magistrate to consider this evidence, however, because in making a preliminary determination regarding the existence of a privilege,[15] a court is not bound by the hearsay rule. FED. R. EVID. 104(a). Muro also asserts that other evidence contradicts the Magistrate's finding, such as the fact that Target could not produce a cover letter from this production, and the fact that an e-mail from Target's counsel to Muro's counsel in May of 2005 did not mention any privileged documents. (Pl.'s Objs. 7.) But the fact that there is some evidence that weighs against the Magistrate Judge's finding does not necessarily make that finding wrong, especially when the contrary evidence is itself equivocal. Thus, the Magistrate Judge's finding that

---

[14]    In response to Muro's motion to compel, Target also produced evidence from its word processing system that, on June 15, 2005, a document entitled "Target/Muro Privilege Log" was edited and printed. (2d Brown Order 3.) Apparently, however, no dated paper copy of this log was ever provided by Target to Judge Brown.

[15]    The Magistrate made her finding regarding the privilege log as part of her decision regarding whether certain documents were protected by the attorney-client privilege. (2d Brown Order 3.)

a privilege log was served in June 2005 is not clearly erroneous.

### C. Ruling that Service of the Privilege Log Was Timely

Muro's third objection is that, if the log was served in June of 2005, that service was so untimely as to justify a total waiver of privilege with respect to the underlying documents. (Pl.'s Objs. 8.) Muro cites no legal authorities that would compel, or even suggest, that the Magistrate Judge's ruling that this production was timely was contrary to law. The Magistrate Judge has broad discretion with regard to the scheduling of discovery, *see Branch v. City of Elmhurst*, No. 96 C 3824, 1998 WL 102630, at *2 n.1 (N.D. Ill. 1998), and the court can see no basis on which it should conclude that this exercise of discretion was improper.

### D. Adequacy of the First Privilege Log

Muro's fourth objection is that Target's privilege log was so inadequate, as a matter of law, that the Magistrate Judge should have ruled that Target had waived privilege. (Pl.'s Objs. 8.) This objection is now moot; Target subsequently produced a second privilege log in response to the Magistrate Judge's order of December 22, 2005, so any issues relating to the adequacy of the first log are irrelevant. *Muro*, 243 F.R.D. at 304. In any event, blanket waiver is not a favored remedy for technical inadequacies in a privilege log. *See Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005) (holding that Magistrate Judge abused his discretion by finding that defects in privilege log merited a sanction of blanket waiver, absent a finding of bad faith); 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2016.1 (2d ed. 1994 & supp. 2007).

### E. "Litigation Hold" Notice

Muro's fifth objection is to the Magistrate Judge's ruling that Target's "litigation hold" notices are subject to the attorney-client privilege and to work product protection. (Pl.'s Objs. 10; 2d Brown Order 2.) But Muro makes no argument as to what error the Magistrate Judge made in classifying the notices as privileged, after conducting an *in camera* review of the documents, other than to say

17

that she finds it "incredible" that the documents would contain privileged information. (Pl.'s Objs. 10.) The court has examined the litigation hold notices *in camera.* Each seem to be communications of legal advice from corporate counsel to corporate employees regarding document preservation. As the litigation hold notices, on their face, appear to be privileged material, there is no basis for finding that the Magistrate Judge clearly erred, nor any need to address Muro's argument that work product protection is overcome here by her showing of need.

### F.    Adequacy of Rule 30(b)(6) Deponents

Muro's sixth objection is to the Magistrate Judge's ruling that it was unnecessary to compel production of 30(b)(6) deposition witnesses, because the prior 30(b)(6) depositions taken by Muro had been adequate. (Pl.'s Objs. 11; 2d Brown Order 1.) Muro's motion argues at length against the Magistrate Judge's conclusion that any problems at the depositions resulted not from the under-preparation of the designated witnesses, but rather from the manner in which Muro's counsel, Mr. Piell, conducted the depositions. (Pl.'s Objs. 11-12; 2d Brown Order 1.) These complaints are ill-founded; having reviewed the deposition transcripts, the court concludes that Mr. Piell substantially complicated the depositions, and often confused the witnesses, by employing elaborate hypothetical questions,[16] by asking witnesses questions that employed terms that the witnesses did not understand,[17] by asking witnesses to speculate as to the state of mind of other, sometimes

---

[16]    For example, Mr. Piell asked Brian Ohana the following question:

If I have an account relationship with Target and in order to access that account and continue the relationship, I have to activate a credit card, if I don't activate the credit card, is that an indication that it is not an established relationship?

(Ohana Dep. 51:15-20.) While the meaning of this question can be divined from a slow and careful parsing, it is unsurprising that the witnesses were often confused. At another deposition, the witness, Susan Wolf, complained that she was confused because of "[a]ll these what if's . . . all these hypotheticals." (Wolf Dep. 131:11-19.)

[17]    Mr. Piell asked Mr. Ohana: "What do you consider to be a well-established relationship?" (Ohana Dep. 50:10-12.) Then, despite the witnesses' expressed confusion at the

(continued...)

hypothetical, people,[18] and by asking questions that were compound and confusing.[19]

The remainder of Muro's argument on this objection consists of alleging defects in the preparation of Susan Wolf and Bryan Thomas; she raises no specific objection to the adequacy of Brian Ohana. (Pl.'s Objs. 12-13.) The only concrete complaints raised by Muro in her objection regarding the adequacy of Susan Wolf was that "she could not answer basic questions on at least one hundred twenty occasions" and that occasionally she could not direct Mr. Piell to those who could answer those questions. (Pl.'s Objs. 13.) This complaint falls short of the mark, however; unless Muro can identify to the court some topic for which Wolf was a designated witness, regarding which she was unprepared to testify, there is no basis for finding that the Magistrate Judge clearly erred in finding her adequate.

Muro is more definite as to Bryan Thomas; she complains that Mr. Thomas "could not provide the number, let alone identify, the individuals who claimed to have closed their account or

---

[17](...continued)
term "established relationship," Mr. Piell continued to ask numerous questions about whether various scenarios would constitute an "established relationship." (*Id.* at 51:3-53:1, 58:19-61:3.)

[18]     Mr. Piell asked Susan Wolf the following question:

If I call up a company and say I want to end my credit card account relationship with you, and I don't want to carry your credit card any more, and you carry multiple credit cards with that company, is it likely that they only want to close one of their credit cards or all of their credit cards?

(Wolf Dep. 157:8-14.) He also asked Mr. Ohana, "Do you think the author [not Mr. Ohana] of that e-mail thinks that . . . Target has an established relationship with that card holder?" (Ohana Dep. 59:19-22.)

[19]     Mr. Piell asked Bryan Thomas the following question:

Now, generally speaking, you do keep track of that? An account was opened—Target tracks complaints regarding accounts being opened in a person's name where the person's claiming they never opened the account and/or claims that they closed the account and it's still showing up as active, or they're getting bills. Target does track that, correct?

(Thomas Dep. 8:4-12.)

complained about their account not being closed." (Pl.'s Objs. 13.) Mr. Thomas was noticed to testify only as to "the identities . . . of all individuals from whom Target . . . [has] received complaints that the person(s) did not have a Target credit card account or that such an account had been closed." (Bryan Thomas Deposition Response Inadequacies 1, Pl.'s Objs. Ex. S.) Despite the language of the 30(b)(6) notice, Mr. Piell never asked for the identities of any such individuals, so we will never know whether Mr. Thomas was adequately prepared to testify on this score. Thus, Muro has not shown that it was clearly erroneous for the Magistrate Judge to refuse to order additional 30(b)(6) depositions.[20]

### G.    Adequacy of Target's Answer to Interrogatory Number Ten

Finally, Muro objects to the Magistrate Judge's order denying her motion to compel a further answer to Interrogatory Number Ten. (Pl.'s Objs. 15; 2d Brown Order 2.) Interrogatory Number Ten sought the following information:

(1) Number of Target VISA accounts opened.
(2) Number of Target Gift cards converted by account holder to Target VISA.
(3) Number of Target Guest Cards automatically converted to Target VISA.

(2d Brown Order 2.) Judge Brown denied the motion to compel an answer to this interrogatory because Muro had admitted that the only relevance of this information related to claims dismissed in the court's prior summary judgment order. (*Id.*) In her objection to this order, Muro does not identify any other relevance of this information; nor can the court see how the numbers of accounts converted would be relevant to the two claims remaining in this action, which are Muro's individual

---

[20]    In her section detailing objections to the Magistrate Judge's ruling on the 30(b)(6) question, Muro devotes a page to an argument that does not relate to the 30(b)(6) adequacy question. (Pl.'s Objs. 14.) The court has great difficulty comprehending this argument, which appears to be, in equal parts, a motion for sanctions for Target's failure to produce certain documents, a complaint about the time limit for Rule 30(b)(6) depositions, and a motion for sanctions due to the alleged "obstreperousness" of Sue Wolf during her deposition. (*Id.*) As the Magistrate Judge's order did not contain rulings relating to any of these questions, an objection to her order is not the proper place to raise these issues; nor is this court prepared to rule upon them without a response from Target.

complaint that she received an unsolicited offer for a TVC after her Target Gift Card account had been closed, and her claim for declaratory relief. Accordingly, Muro has not demonstrated that she is entitled to discovery regarding the information she seeks through her motion to compel, so this objection is overruled.

## V. Target's Objections to Magistrate Judge Brown's Opinion and Order

Target objects to Magistrate Judge Brown's order that Target has waived privilege with respect to all documents listed in its revised privilege log [239], filed on December 19, 2006, and her order compelling production of all such documents. (Defs.' Objs. [251], at 1). *Muro*, 243 F.R.D. at 310. This court will reverse the Magistrate Judge's non-dispositive orders only if they are clearly erroneous or contrary to law; the court must have a "definite and firm conviction that a mistake has been made." FED. R. CIV. P. 72(a); *Weeks*, 126 F.3d at 943. Target has four objections to the finding of waiver and the motion to compel production: (1) Target believes the requested documents are no longer relevant in this action, (2) Target argues that Muro has waived her objection to the log's sufficiency, (3) Target argues that the log was adequate, and (4) Target argues that the sanction of a blanket waiver of privilege is excessive. The court will consider each of these objections in turn.

### A. Target's Relevance Objection

Target's first objection is that the documents referenced in the privilege log—documents relating to "the practices and policies utilized and referenced within Target . . . in determining who will be a potential recipient of a credit card"—are no longer relevant in this action, after the court's prior summary judgment order. (Defs.' Objs. 3, 7-9.) There is a strong argument that Target forfeited this argument by failing to make it in a response to Muro's motion to compel, but the court need not reach that question, because the relevance objection lacks merit. Material sought during discovery is relevant if it either tends to make any fact of consequence in the action more or less probable, or if it is reasonably calculated to lead to the discovery of admissible evidence. FED. R.

EVID. 401; FED. R. CIV. P. 26(b)(1).  Muro still has a claim before this court regarding the alleged offer of an unsolicited credit card to her after her Target Gift Card account had been closed. Target's internal documents relating to who will be a potential credit card recipient are relevant to a determination of whether or not it is likely that Muro, who contends that she did not have a Target Gift Card account, was herself a recipient of a card.  Therefore, Target's relevance objection fails.

### B.    Target's Waiver Objection

Target's second objection is that Muro waived her argument that the privilege log was insufficient by failing to raise that claim until seven months after the privilege log had been served. (Defs.' Objs. 9-10.)  This objection is itself untimely, being raised more than a year after the April 6, 2006 minute entry in which the Magistrate Judge declined to find waiver on this basis.  (2d Brown Order 3.)  Because this objection was not made within the ten-day window of Rule 72(a), it is overruled.

### C.    Target's Objection that the Revised Privilege Log Is Adequate

Target's third objection is that the Magistrate Judge erred by finding that Target's privilege log was inadequate, and that it failed to comply with the Magistrate Judge's orders.  The Magistrate Judge ruled that the log was inadequate for two reasons: (1) The log failed to "identify and describe separately . . . each allegedly privileged message within a string of e-mail communications," and (2) the log did not include enough information to demonstrate that each communication was limited to persons within the scope of the privilege.  *Muro*, 243 F.R.D. at 306-08.

#### 1.    Failure to Separately Itemize E-mails

The Magistrate Judge ruled that the failure to individually itemize e-mails made the log inadequate because this defect violated Rule 26(b)(5)'s requirement that a log include enough information that an opposing party can assess the applicability of privilege.  *Muro*, 243 F.3d at 306-07.  Authorities are divided on whether a privilege log should include separate entries for multiple e-mails within the same string.  Some courts have held that one e-mail string should receive only

a single entry. *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1074 n.6 (N.D. Cal. 2002). Other courts have concluded that each e-mail should be listed separately, to enable the opposing party to determine whether each e-mail in the strand is entitled to privilege, on the theory that this inquiry is necessary if the court is to determine that the entire strand is to receive protection. *See In re Univ. Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005); *see also Stafford Trading, Inc. v. Lovely*, No. 05 C 4868, 2007 WL 611252, at *8 (N.D. Ill. Feb. 22, 2007) (Keys, Mag. J.) (treating an e-mail which forwarded a second e-mail as two separate communications, and then holding that privilege was waived as to both such "communications" if either was sent to an unidentified recipient). There is currently no binding authority on this issue.

Despite the existence of persuasive authority supporting Judge Brown's position, the court respectfully disagrees that Rule 26(b)(5)(A) requires separate itemization. As *Upjohn Co. v. United States* makes clear, the fact that non-privileged information was communicated to an attorney may be privileged, even if the underlying information remains unprotected. 449 U.S. 383, 395-96 (1981). As applied in the e-mail discovery context, the court understands *Upjohn* to mean that even though one e-mail is not privileged, a second e-mail which forwards that prior e-mail to counsel might be privileged in its entirety. In this respect, the forwarded material is similar to prior conversations or documents that are quoted verbatim in a letter to a party's attorney.[21]

A party can therefore legitimately withhold an entire e-mail *forwarding* prior materials to counsel, while also disclosing those prior materials themselves. It could well be confusing to

---

[21]     Muro analogizes e-mail strings to letters with attachments, and cites *Sneider v. Kimberly-Clark Corporation,* 91 F.R.D. 1, 4 (N.D. Ill. 1980)*,* for the proposition that attachments to a letter containing confidential communications to counsel do not, by virtue of that attachment, become privileged. (Pl.'s Resp. to Objs. [259], at 13.) Muro misreads *Sneider*, which merely stands for the proposition, recognized in *Upjohn*, that non-privileged documents do not become privileged solely by virtue of being transmitted to counsel. *Id.* But as the *Sneider* court recognized, communications of facts are privileged even if the original facts are not. *Id.* Thus, when letters to counsel included certain attachments, the fact that those documents were attached may be privileged, even if the originals are not. Thus, the analogy of e-mail strings to letters with attachments does not favor the rule announced by the Magistrate Judge.

require a party to list documents in its privilege log that it had already furnished to opposing counsel. More troublingly, the disclosure of this information could very well be a breach of attorney-client privilege. If the opposing party can gather enough material from the log and already produced materials to discover the topic or contents of material forwarded to counsel, then a privileged communication has been revealed to that party. Rule 26(b)(5)(A) requires only that a party provide sufficient information for an opposing party to evaluate the applicability of privilege, "without revealing information itself privileged." Thus, Judge Brown erred by reading this rule to require a method of itemization that will, in some cases, force parties to disclose privileged information.

Muro defends the Magistrate Judge's ruling on the ground that some e-mail strings discuss "both legal and non-legal issues." (Pl.'s Resp. to Objs. [259], at 13.) A discussion of "non-legal issues" can very often be privileged, however. For a communication between an attorney and his client (or his client's representative) to be privileged, the communication must be made in confidence, the communication be made for the purpose of facilitating legal services by the lawyer for the client, and the client must not have waived the privilege. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). There is no requirement that the communication involve only "legal issues," and factual communications made for the purpose of facilitating legal representation are also protected. Muro cites *Sneider v. Kimberly-Clark Corporation* to support his argument, but *Sneider* merely used the primarily non-legal content of communications as evidence that the routine forwarding of copies to counsel was not conducted for the primary purpose of obtaining legal advice. 91 F.R.D. 1, 5 (N.D. Ill. 1980). To the extent that *Schneider* could be read to stand for a rule exempting all communications of business information from protection, this suggestion would be contrary to the Seventh Circuit's law, which does not impose such a requirement. *See BDO Seidman*, 492 F.3d at 815.

Therefore, the court sustains Target's objection to the Magistrate Judge's ruling that its

privilege log was inadequate for failure to separately itemize each individual e-mail quoted in an e-mail string.

### 2.    Inadequate Information Regarding Dissemination

The second basis for the Magistrate Judge's finding that the privilege log was inadequate is that it failed to adequately demonstrate that the dissemination of the documents it listed was confined to those individuals within the sphere of corporate privilege. The Magistrate Judge's order listed three failings of the log as the basis for finding it inadequate on this ground. The first is that the log indicated that the documents were disseminated to a large group of recipients, including some unidentified recipients. *Muro*, 243 F.R.D. at 307-08. The second is that the log did not adequately describe the role of all of the recipients of each document. *Id.* at 308. The third is that most of the underlying documents do not contain explicit limitations on further dissemination. *Id.*

The Magistrate Judge's first concern was that the log indicated that many documents received wide dissemination, and that some documents were disseminated to unidentified individuals. *Muro*, 243 F.R.D. at 307-08. She noted that some of the documents were sent to "at least ten employees." *Id.* There is no rule of law, however, that puts a numerical upper limit on the number of corporate employees who can be within the sphere of privilege. *See Upjohn*, 449 U.S. at 39 (rejecting the "control group" test for the sphere of privilege, which would have confined the sphere to a small group of corporate officers). Rather, privilege can extend to any employee who communicates with counsel at the direction of her superiors, regarding matters within the scope of her duties. *Id.* at 394. Nor need this be a small group; in *Upjohn*, for instance, communications with eighty-six corporate employees were held to be within the scope of a potential privilege. *Id.* at 395 n.3.

The Magistrate Judge also found the log deficient because it failed to identify all of the

recipients of some messages; specifically, the log included some e-mails sent to distribution lists[22] without identifying all the people on those lists. *Muro*, 243 F.R.D. at 307-08. This represents a serious defect in the privilege log; without the identities and job descriptions of the persons on the distribution lists, there is no way for an opposing party to assess whether they are within the sphere of corporate privilege, as is required by Federal Rule of Civil Procedure 26(b)(5)(A). Target's only response on this point is to assert that "there is no basis for finding a waiver as to [the legal] advice" contained in five of the nine documents sent to distribution lists. (Defs.' Objs. 18.) This court finds no error of either law or fact in the Magistrate Judge's ruling that the log was defective because it failed to specify all recipients of the documents listed in log entries 47, 56-58, 61-63, 74 and 75; Target has not established that those documents are privileged.

The second way in which the Magistrate Judge found the revised log to be defective was its use of sometimes-cryptic job titles to explain the role of the recipients of e-mails. Examples provided by the Magistrate Judge included titles such as "Autosub Project Team," "TFS Systems Stability" and "Senior Specialist, Card Product Development." *Muro*, 243 F.R.D. at 308. Indeed, in one entry, a recipient is listed only as "Vice President." *Id.* at 308 n.8. Such cryptic titles do make it difficult for an opposing party to assess the applicability of privilege; it is hard to tell whether an individual responsible for "TFS Systems Stability" is being contacted concerning matters within her employment duties or not. Target disputes this ruling only by arguing that some of the titles, such as "Autosub Project Team," were "accurate and functional description[s] for several key employees." (Defs.' Objs. 12.) Even if "Autosub Project Team," by itself, is a sufficient description, other titles, such as "Vice President," clearly are not adequate to enable an outsider to determine the recipient's role within Target. The Magistrate Judge did not err in concluding that some of the

---

[22] The log included e-mails sent to mailing lists such as "TFS-Auth GTLs" and "TFS-GTL's-Mpls," but provided no information regarding the number, identity or role of the individuals on these lists. *Muro*, 243 F.R.D. at 308.

titles were insufficient to permit Muro to assess the applicability of privilege, FED. R. CIV. P. 26(b)(5)(A), and the remedy she suggested—the submission of affidavits describing the role of each employee—was within her discretion.

The final flaw identified by the Magistrate Judge in the privilege log was the absence, from many of the documents listed, of any explicit limitations against further dissemination. *Muro*, 243 F.R.D. at 308. However wise such an explicit limitation might be, this court does not believe that the absence of such a mark, by itself, defeats privilege. A document that lacks such an explicit limitation could be kept confidential, just as a document that does bear confidentiality warnings might nevertheless be broadly circulated. *See BDO Seidman*, 492 F.3d at 815 (requiring only a confidential communication made for the purpose of obtaining legal assistance); *see also* Heidi K. Brown, *Fundamentals of Federal Litigation* § 9:16 (2005) (providing a sample privilege log that does not include a recital of limitations against dissemination).

As noted earlier, the Magistrate Judge's order purports to grant Muro's motion to compel production of the documents listed in the log, on the basis that the log is insufficient. (Pl.'s Mot. to Compel [240], at 1.) *See Muro*, 243 F.R.D. at 303. Most of the order discusses the sufficiency of the log rather than the showing of privilege with respect to the documents identified in it. Significantly, the Magistrate Judge's focus was on the deficiencies in the log; she did not make specific rulings about the privileged nature of the majority of the documents, apart from her observations about the absence of any specific limitations on dissemination, and her observation that some documents were sent to more than ten recipients.[23] *Muro*, 243 F.R.D. at 307-09.

Accordingly, the court sustains Target's objections as to the Magistrate Judge's ruling that the privilege log was defective on the grounds that because it listed too many recipients of certain documents, and that many of the many documents do not contain explicit limits on further

---

[23] The Magistrate Judge did not, at any point, discuss fifty-three of the eighty-nine documents referenced in the privilege log.

27

dissemination. As explained earlier, the court overrules Target's remaining objections to the Magistrate Judge's ruling.

### D. Target's Objection to the Waiver Sanction

Finally, Target objects that even if the privilege log is inadequate, a sanction of waiver for every document listed therein is too severe. This court is uncertain whether the Magistrate Judge ordered production of all the documents listed in the log as a sanction, or on the basis of its *in camera* review of each document. An order that privileged documents be disclosed as a sanction is appropriate, however, only if the party that authored the log has displayed willfulness, bad faith or fault. *Equitable Life*, 406 F.3d at 877; *see* 8 Wright, Miller & Marcus, *supra*, § 2016.1 (finding waiver of privilege for technical defaults in a privilege log created in good faith is unduly harsh). The Magistrate Judge did not make such a finding in this case. *See Muro*, 243 F.R.D. at 310. This court, will, therefore, vacate the order to produce the documents, permit Target a final opportunity to revise its privilege log, and perform a further *in camera* inspection of the documents for which privilege is claimed, if appropriate.

### CONCLUSION

For the foregoing reasons, Target's motion for summary judgment on Count II [114] is granted, and Muro's cross-motion for summary judgment on Count II [142-3] is denied, as is her motion to certify a class as to the same claim [17-1]. Muro's motion for reconsideration of the entry of summary judgment in favor of Target on the substitution defense [154-1], and her objections to the Magistrate Judge's orders of April 5 and 6, 2006 [231-2], are also denied.

Target's objection [251] is sustained in part and overruled in part. Target is directed, within ten days, to submit a revised privilege log addressing the defects identified by this court and by the Magistrate Judge. At that time, this court will conduct an *in camera* review of the documents on the log, and determine, on an individual basis, whether each is protected by privilege.

Finally, the court notes that, during the course of briefing the motion for summary judgment

on Count II, Muro admitted that she suffered no actual damages, and paid no finance charges, in connection with her receipt of the TVC.  (Muro Dep. 43:18-23; Pl.'s LR 56.1 Resp. ¶ 16; Pl.'s Summ. J. Sur-Reply 6).  These admissions, coupled with the fact that Muro has only an individual claim for relief, raise a concern about Muro's standing to bring a TILA claim.  Section 1640(a) appears to provide for civil liability in credit card cases only when the recipient has suffered actual damages, *id.* at § 1640(a)(1), when the recipient has paid a finance charge, *id.* at § 1640(a)(2)(A)(I), or when there is a class action, *id.* at § 1640(a)(2)(B).  The court therefore invites briefing on whether Muro has standing to bring her individual claim under Count I, and whether this court should exercise its discretion to dismiss Muro's claim for declaratory relief.

ENTER:

Dated: November 2, 2007

_____

REBECCA R. PALLMEYER
United States District Judge